J. ALEXANDER LAWRENCE
ALawrence@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: 212.468.8000
Facsimile: 212.468.7900

WILLIAM FRENTZEN (*pro hac vice* forthcoming)
WFrentzen@mofo.com
MICHAEL BURSHTEYN (*pro hac vice* forthcoming)
MBurshteyn@mofo.com
LARA MCDONOUGH (*pro hac vice* forthcoming)
LMcDonough@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: 415.268.7000
Facsimile: 415.268.7500

RAFAEL YAKOBI (*pro hac vice* forthcoming)
rafael@thecryptolawyers.com
THE CRYPTO LAWYERS, PLLC
848 Brickell Avenue, Penthouse 5
Miami, Florida 33131
Telephone: 619.317.0722

*Attorneys for Plaintiff Mango Labs, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

MANGO LABS, LLC,

      Plaintiff,

  -against-

AVRAHAM EISENBERG,

      Defendant.

------------------------------------------------------------------ x

Case No. 23-cv-665

**MANGO LABS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

                                                                                                                      Page

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

       A.     Mango Markets is the leading decentralized crypto exchange. ............................. 2

       B.     Defendant, a crypto personality notorious for exploits, attacked Mango Markets. ................................................................................................................... 2

       C.     After the attack, Defendant fled the country, attempted to launder the proceeds, and used them to attack others. ................................................................ 4

       D.     Defendant is currently being held in federal custody without bail pending his trial in New York. ............................................................................................. 5

LEGAL STANDARD .................................................................................................................. 6

ARGUMENT ................................................................................................................................ 7

I.     THE COURT SHOULD ENJOIN DEFENDANT FROM CONCEALING OR DISIPATING THE ASSETS HE MISAPPROPRIATED .................................................... 7

       A.     Mango Labs will suffer irreparable harm absent injunctive relief stopping Defendant from hiding the assets he misappropriated. .......................................... 7

       B.     Mango Labs is likely to succeed on the merits of its claims. ................................ 9

               1.     Conversion ................................................................................................. 10

               2.     Fraudulent Misrepresentation .................................................................... 11

               3.     Unjust Enrichment ..................................................................................... 12

               4.     Declaratory Judgment ................................................................................ 12

       C.     The balance of hardships weighs in favor of Mango Labs. ................................. 14

       D.     The public's interest weighs in favor of granting an injunction. .......................... 14

II.    A TEMPORARY RESTRAINING ORDER PENDING THE COURT'S ADJUDICATION OF PLAINTIFF'S PRELIMINARY INJUNCTION REQUEST IS MERITED ............................................................................................. 15

CONCLUSION ........................................................................................................................... 16

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*A.X.M.S. Corp. v. Friedman*,
  948 F. Supp. 2d 319 (S.D.N.Y. 2013) ................................................................................. 6, 9

*Austin Instrument, Inc. v. Loral Corp.*,
  29 N.Y.2d 124 (1971) ............................................................................................................ 13

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
  17 N.Y.3d 269 (2011) ............................................................................................................ 13

*Concheck v. Barcroft*,
  No. 2:10-CV-656, 2010 WL 4117480 (S.D. Ohio Oct. 18, 2010) .......................................... 15

*Dama S.p.A v. John Does 1-35*,
  113 F. Supp. 3d 686 (S.D.N.Y. 2015) ..................................................................................... 9

*Derenoncourt v. Costco Cos., Inc.*,
  No. 97 CIV. 3618 (DLC), 1998 WL 883305 (S.D.N.Y. Dec. 16, 1998) ................................ 13

*Emps.' Fire Ins. Co. v. Cotten*,
  245 N.Y. 102, 105 (1927) ...................................................................................................... 10

*Greenlight Cap. v. Apple, Inc.*, Nos. 13 Civ. 900(RJS), 13 Civ. 976(RJS), 2013
  WL 646547 (S.D.N.Y. Feb. 22, 2013) ............................................................................. 9, 14

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*,
  655 F.3d 136 (2d Cir. 2011) .................................................................................................. 13

*KiSKA Const. Corp.US v. G & G Steel, Inc.*,
  No. 04-CV-9252-CSH, 2005 WL 1225944 (S.D.N.Y. May 20, 2005) ................................. 14

*Lagemann v. Spence*,
  No. 18-cv-12218-GBD-RWL, 2020 WL 7384009 (S.D.N.Y. Dec. 16, 2020) ....................... 10

*Lazor v. Univ. of Conn.*,
  560 F. Supp. 3d 674 (D. Conn. 2021) .................................................................................... 15

*Leddy v. Becerra*,
  No. 22-CV-4252, 2022 WL 2978620 (E.D.N.Y. July 28, 2022) ...................................... 6, 15

*Mandavia v. Columbia Univ.*,
  912 F. Supp. 2d 119 (S.D.N.Y. 2012), *aff'd*, 556 F. App'x 56 (2d Cir. 2014) ....................... 13

*Myun-Uk Choi v. Tower Research Capital LLC*,
    890 F.3d 60 (2d Cir. 2018)..................................................................................................12

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*,
    88 A.D.2d 883 (1st Dep't 1982) .........................................................................................10

*Rana v. Islam*,
    305 F.R.D. 53 (S.D.N.Y. 2015) ..........................................................................................11

*Red Earth LLC v. United States*,
    657 F.3d 138 (2d Cir. 2011)......................................................................................6, 9, 14

*Roswell Cap. Partners LLC v. Alternative Const. Techs.*,
    No. 08 CIV 10647(DLC), 2009 WL 222348 (S.D.N.Y. Jan. 30, 2009) ....................................9

*Sharette v. Credit Suisse Int'l*,
    127 F. Supp. 3d 60 (S.D.N.Y. 2015)................................................................................ 11-12

*Shi v. Le*,
    No. 21-CV-1361-ARR-CLP, 2022 WL 1085420 (E.D.N.Y. Mar. 2, 2022),
    *report and recommendation adopted*, No. 21-CV-1361-ARR-CLP, 2022 WL
    896963 (E.D.N.Y. Mar. 28, 2022) .....................................................................................12

*VKK Corp. v. Nat'l Football League*,
    244 F.3d 114 (2d Cir. 2001)...............................................................................................14

*Westernbank Puerto Rico v. Kachkar*,
    No. 07-1606 (ADC/BJM), 2008 WL 8089778 (D.P.R. July 23, 2008) ..................................15

*Worth Const. Co. v. I.T.R.I. Masonry Corp.*,
    No. 98 CIV. 2536 (CM), 2001 WL 209924 (S.D.N.Y. Feb. 21, 2001) ..................................13

**Rules**

Fed. R. Civ. P
    64...................................................................................................................................16
    65(b)................................................................................................................................6

N.Y. C.P.L.R. § 6212(a) ...........................................................................................................16

## PRELIMINARY STATEMENT

On October 11, 2022, Avraham "Avi" Eisenberg ("Defendant") executed a malicious attack on Mango Markets, the leading decentralized cryptocurrency exchange. His plot involved fraud and deception conducted on Mango Markets and multiple third-party cryptocurrency exchanges. Through his attack, Defendant drained all the liquidity from Mango Markets and appropriated $114 million from its depositors. He retains approximately $47 million of these misappropriated digital assets. Defendant admits to his acts. Indeed, he has gloated about them on Twitter and in podcast interviews as a "highly profitable trading strategy."

To prevent him from hiding those funds to avoid satisfying a judgment, Mango Labs, LLC ("Mango Labs") seeks an order enjoining Defendant from moving and dispersing what remains of the Mango Markets depositors' funds that he retains. Defendant has taken multiple actions demonstrating the high risk that he will hide (or lose) the assets. For example, after Defendant attacked Mango Markets, he used the misappropriated assets to unsuccessfully attack at least one other protocol, losing millions in the process. Defendant also immediately fled the country after his attack on Mango Markets for two months. During that time, he moved the assets through a series of blockchain wallets and at least one offshore cryptocurrency exchange. Now he is detained pending his criminal trial in the Southern District of New York, because a federal judge found significant risk that Defendant will secrete funds. Due to the nature of cryptocurrency assets, he is capable of secreting or losing them through ill-conceived schemes or intentional deception even while in custody.

Mango Labs consequently brings this motion for a preliminary injunction and temporary restraining order to stop Defendant from dispersing the remaining funds he misappropriated from Mango Markets.

1

## FACTUAL BACKGROUND

**A.   Mango Markets is the leading decentralized crypto exchange.**

Mango Markets is a decentralized, non-custodial, cryptocurrency exchange. (Declaration of Dafydd Durairaj ("Durairaj Decl.") ¶ 2.) Since its beginnings in 2021 as a decentralized finance ("DeFi") pioneer, Mango Markets has experienced extraordinary growth. Depositors have transacted over $10 billion on the platform. (*Id.*)

Because it is a DeFi platform, no central entity or person governs Mango Markets. (*Id.* ¶ 3.) The organization that governs the platform is the Mango Decentralized Autonomous Organization ("Mango DAO"). (*Id.*) Mango DAO members can vote on governance proposals using the Mango DAO governance token ("MNGO") to make decisions about Mango Markets. (*Id.*)

Mango DAO maintains a treasury that, before Defendant's October 2022 attack, contained approximately $66 million in digital assets. (*Id.* ¶ 5.) The treasury's purpose is primarily to serve as an insurance fund. (*Id.* ¶ 4.) It insures against unexpected fluctuations in the cryptocurrency markets underlying Mango Markets as well as attacks like the one at issue in this action. (*Id.*) A nominal amount of the treasury funds, approximately $2.5 million out of approximately $66 million, have also been used to further the development of Mango Markets. (*Id.* ¶ 5.) This includes funding Mango Labs, an entity tasked with forward-looking development for Mango Markets by the Mango DAO. (*Id.*).

**B.   Defendant, a crypto personality notorious for exploits, attacked Mango Markets.**

Defendant is a notorious online personality in the crypto industry. According to reports, he allegedly embezzled $14 million from another DAO called Fortress DAO in February 2021.[1]

---

[1] *See, e.g.*, https://karlstack.substack.com/p/anatomy-of-an-alleged-dao-scam, explaining the allegations.

Defendant viewed Mango Markets as an attractive target because of the many digital assets depositors used as collateral on the platform. After deliberate planning, Defendant executed a malicious attack against Mango Markets on October 11, 2022. (Durairaj Decl. ¶ 7.) He manipulated the price of the MNGO governance token and, through fraud and deception, converted approximately $114 million from Mango Markets depositors into his own accounts. (*Id*.) Defendant took steps to conceal his identity and the flow of his funds to pull off the attack. He did so by using multiple accounts (and at least one false identity) across centralized and decentralized cryptocurrency exchanges. (*Id*. ¶ 8.) He violated the contractual Terms of Use of the centralized exchanges he leveraged, including by using a Ukrainian woman's identity to open an account in furtherance of his scheme. (*Id*.)

Defendant's sophisticated coordination of multiple accounts across offshore exchanges and rapidly moving funds between blockchains and protocols enabled him to rapidly misappropriate $114 million from Mango Markets. The mechanics of his attack involved manipulating the price of the MNGO governance token by inflating prices for that token on three other exchanges.[2] Those prices then impacted an "oracle" (software that reported the MNGO price on Mango Markets from those three exchange inputs) and dramatically raised the price of MNGO on Mango Markets. Defendant had opened two accounts on Mango Markets and used those accounts to place simultaneous long and short positions. When the MNGO price shot up—due to Defendant's coordinated deception across other platforms—Defendant used his long position to liquidate all the collateral on Mango Markets. This enabled Defendant to drain all

---

[2] Defendant's attack is detailed in the Complaint in this action, as well as in the Complaints filed by federal prosecutors in the Southern District of New York, the Commodities Futures Trading Commission, and Securities and Exchange Commission. *See U.S.A. v. Eisenberg*, No. 1:23-cr-00010-RMB-1 (S.D.N.Y. Dec. 23, 2022); *CFTC v. Eisenberg*, No. 23-cv-00173, (S.D.N.Y. Jan. 9, 2023); *SEC v. Eisenberg*, No. 23-cv-00503, (S.D.N.Y. Jan. 20, 2023).

liquidity from the platform, $114 million in digital assets, and misappropriate those assets for his own purposes. (Durairaj Decl. ¶ 9.)

Defendant then demanded a ransom, putting the Mango DAO in the position that it was forced to vote for an unenforceable proposal—under duress—purporting to release depositors' claims against him and precluding them from pursuing criminal investigations against him. (*Id.* ¶ 12.) Specifically, the proposal included the following unenforceable language: "*By voting for this proposal, mango token holders agree to pay off the bad debt with the treasury, and waive any potential claims against accounts with bad debt, and will not pursue criminal investigations or freezing of funds once the tokens are sent back as described above.*" (*Id.*) Following the Mango DAO vote, Defendant returned approximately $67 million of the money he unlawfully converted. (*Id.* ¶ 14.) He retains the remaining $47 million. (*Id.*)

After Defendant's attack, Mango DAO voted to use its insurance fund to make depositors whole. The Mango DAO voted to transfer digital assets from its insurance fund to depositors from whom Defendant misappropriated funds. (*Id.* ¶ 15.) In return, those depositors transferred their claims against Defendant to Mango Labs, the plaintiff in this action. (*Id.*) So far, depositors who lost assets as a result of Defendant's attack have agreed to assign over 90% of their claims to Mango Labs to obtain the refund. (*Id.*)

### C. After the attack, Defendant fled the country, attempted to launder the proceeds, and used them to attack others.

On or around October 12, 2022, the day after his attack, Defendant fled the United States with the proceeds he misappropriated. (Declaration of Michael Burshteyn ("Burshteyn Decl.") Ex. A.)

As soon as he completed the attack, Defendant removed the funds he converted from Mango Markets. He then used the converted funds from Mango Markets to pursue other

4

high-risk and/or illegal activities. (Durairaj Decl. ¶¶ 16-17.) These activities included attacking other cryptocurrency markets. On information and belief, for instance, Defendant used his ill-gotten gains to attack AAVE (a decentralized crypto lending platform) in December 2022. (*Id.* ¶ 16.) Defendant also bragged online about speculating in cryptocurrency markets with the misappropriated funds. (*Id.* ¶ 17.)

Defendant has been attempting to conceal Mango Markets depositors' funds too. Since October 2022, he has moved those funds through at least one offshore cryptocurrency exchange in an apparent effort to avoid potential judgments or seizures. (Declaration of Rodrigo Barbara ("Barbara Decl.") ¶ 5.)

### D. Defendant is currently being held in federal custody without bail pending his trial in New York.

Two months after fleeing the country in the wake of his attack, Defendant returned to Puerto Rico. (Burshteyn Decl. Ex. A.) Federal law enforcement arrested him there on December 26, 2022. Prosecutors from the United States Attorney's Office in the Southern District of New York filed the underlying indictment in this Court. The indictment contains three criminal counts for Commodities Fraud, Commodities Manipulation, and Wire Fraud. (*Id.*)

As of the time of this filing, Defendant is detained pending trial in New York. (*Id.* Ex. B.) A Federal Magistrate Judge in Puerto Rico—where Defendant was apprehended—denied Defendant bail due to the seriousness of his crime, because he fled the country previously, and because he has already tried to hide assets. (*Id.*) On January 9, 2023, federal prosecutors requested a seizure order for the assets Defendant appropriated. (*Id.* Ex. C.) The seizure request remains pending, providing Defendant with the opportunity to further conceal and dissipate assets to avoid a potential judgment in this action. (*Id.*)

**LEGAL STANDARD**

Preliminary injunctive relief requires that a party demonstrate "(1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction." *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011) (citation omitted). "The 'likelihood of success' element of preliminary injunctive relief requires that plaintiff convince the Court that it is more likely than not—that is a greater than fifty percent chance—that it will succeed on its claims." *A.X.M.S. Corp. v. Friedman*, 948 F. Supp. 2d 319, 331 (S.D.N.Y. 2013) (citation omitted).

It is "well established" in the Second Circuit that "the standard for an entry of a TRO is the same as for a preliminary injunction." *Leddy v. Becerra*, No. 22-CV-4252 (GRB)(LGD), 2022 WL 2978620, at *4 (E.D.N.Y. July 28, 2022) (quoting *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (granting TRO)). Federal Rule of Civil Procedure 65(b) permits courts to "issue a temporary restraining order without written or oral notice to the adverse party." A TRO should issue where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." *Id.*

Here, the Court should grant Mango Labs' request for a preliminary injunction and order Defendant not to dissipate, move, or transfer the assets he misappropriated from Mango Markets. Pending the Court's preliminary injunction determination, the circumstances merit a temporary restraining order to the same effect.

# ARGUMENT

I. **THE COURT SHOULD ENJOIN DEFENDANT FROM CONCEALING OR DISIPATING THE ASSETS HE MISAPPROPRIATED**

   A. **Mango Labs will suffer irreparable harm absent injunctive relief stopping Defendant from hiding the assets he misappropriated.**

Defendant has every incentive to conceal assets to avoid a judgment in this action. He already attempted to do so and is likely to continue these attempts absent a preliminary injunction.

After he drained all the liquidity from Mango Markets' platform and appropriated depositors' funds, Defendant fled the country and immediately moved those funds out of the two accounts he held with Mango Markets. (Barbara Decl. ¶ 5; Burshteyn Decl. Ex. A.) He then cycled the funds through various cryptocurrencies and dispersed them across multiple blockchain wallets. (Barbara Decl. ¶ 6.) Defendant leveraged at least one offshore cryptocurrency exchange to hide his assets. (*Id.* ¶ 5.) This continues to this day. (*Id.* ¶ 7.)

Defendant has already demonstrated his capability to hide the flow of cryptocurrency assets in his possession through deception. Indeed, he clandestinely moved assets across multiple exchanges—FTX, Serum, and AscendEx—to set up his attack on Mango Markets. (*Id.* ¶ 3.) In his interactions with at least one of the exchanges, according to law enforcement, Defendant used the false identity of a Ukrainian woman to conceal his tracks. (Burshteyn Decl. Ex. A.)

Even if Defendant does not intentionally secrete or dissipate his assets to avoid a judgment, he is likely to lose them. Defendant has boasted on the internet of other high-risk trading strategies. (Durairaj Decl. ¶¶ 16-17.) After recent controversy involving the exchange FTX, for instance, Defendant made public statements about his interest in speculating on events around the controversy. (*Id.* ¶ 17.) In December 2022, Defendant attempted high-risk trades

7

involving the protocol AAVE that caused certain of his assets to become liquidated.  (*Id.* ¶ 16; Barbara Decl. ¶ 8.)  Absent an order enjoining Defendant from transferring or encumbering assets sufficient to satisfy Mango Labs' potential judgment in this action, he is likely to continue doing this.  This risks irreparable harm to Mango Labs because if Defendant loses the appropriated assets through his reckless trades, that will preclude him from making Mango Labs whole.

United States Magistrate Judge Bruce J. McGivern, sitting in Puerto Rico where Defendant was apprehended, evaluated Defendant's request for release on bond, and had similar concerns.  Judge McGivern noted that "reasons for detention include" Defendant's "[s]ignificant family or other ties outside the United States," that Defendant "left the United States for two months after committing the offense," and that "[t]he charged offense involve[d] alleged appropriation of tens of millions of dollars of crypto currency, of which up to $40 million remain unaccounted for, giving the [D]efendant, when combined with his duo citizenship and ties to a foreign country, the means and motivation to flee."  (Burshteyn Decl. Ex B.)

Although Defendant is now in federal custody, an order enjoining him from dissipating assets is critical.  Defendant has publicly stated that he works with a "team" and that the same "team" helped him attack Mango Markets.  (Durairaj Decl. ¶ 11.)  The assets he converted are digital assets that can be moved across blockchains and terrestrial jurisdictions with ease.  Unlike traditional financial assets, all Defendant or a member of his team needs to hide the assets are the associated private keys.  Defendant could easily transfer the private keys while in custody.  (Barbara Decl. ¶ 9.)  They are simply a series of symbols, similar to a website password.  (*Id.*)  Defendant or someone under his control can direct such movements from anywhere, simply by using the private keys and communicating instructions.  (*Id.*)

In other situations involving cryptocurrency, those who misappropriate assets have taken advantage of the ease with which they can be moved to dissipate and hide them. *See United States v. Qin*, No. 1:21-cr-00075 (S.D.N.Y. Feb 4, 2021), ECF No. 2 ¶¶ 7, 11; *United States v. Lichtenstein et al*, No. 1:22-mj-00022, (D.D.C. Feb 7, 2022), ECF No. 1-1 ¶¶ 8-10. Defendant is a particularly brazen actor in this space. Given the significant risk that he intentionally hides or unintentionally loses Mango Labs' assets, the Court should enjoin him from transferring or encumbering at least the $47 million that he retains from his attack on Mango Markets. *See*, *e.g.*, *Dama S.p.A v. John Does 1-35*, 113 F. Supp. 3d 686 (S.D.N.Y. 2015) (granting preliminary injunction and ordering financial service providers not to transfer or dispose of assets); *Roswell Cap. Partners LLC v. Alternative Const. Techs.*, No. 08 Civ. 10647(DLC), 2009 WL 222348, at *18 (S.D.N.Y. Jan. 30, 2009) (granting preliminary injunction to protect against dissipation of contested assets).[3]

B.   **Mango Labs is likely to succeed on the merits of its claims.**

Mango Labs has a significant probability—greater than 50%—chance of success on the merits of its claims against Defendant. This merits issuance of a preliminary injunction. *Red Earth LLC*, 657 F.3d at 143; *A.X.M.S. Corp.*, 948 F. Supp. 2d at 331.[4] All of Mango Labs' claims are based on Defendant's malicious attack on Mango Markets. Defendant is in federal

---

[3] Although Defendant's Indictment includes forfeiture allegations, no order freezing or forfeiting any of the assets that Defendant converted from Mango Markets has yet issued. The injunctive relief Mango Labs requests will preclude Defendant from dissipating assets pending a forfeiture order. Further, any asset forfeiture order in Defendant's criminal case would be limited to assets within the jurisdiction of the United States. Defendant has already secreted digital assets to at least one offshore cryptocurrency exchange. (Barbara Decl. ¶ 5.)

[4] The more likely Mango Labs' success is on the merits of its claims, the lesser the showing of irreparable harm is required based on this Court's precedent. *See*, *e.g.*, *Greenlight Cap. v. Apple, Inc.*, Nos. 13 Civ. 900(RJS), 13 Civ. 976(RJS), 2013 WL 646547, at *8 (S.D.N.Y. Feb. 22, 2013) (noting that a plaintiff's showing of "a clear likelihood of success on the merits requires a relatively lesser showing of harm").

custody and indicted for multiple violations of federal law based on this attack. Every cause of action Mango Labs pleads is likely to succeed.

### 1. Conversion

Mango Labs alleges a Conversion claim based on Defendant's misappropriation of $114 million in funds from Mango Markets depositors. Conversion is the wrongful "exercise of the right of ownership over [something] belonging to another to the exclusion of the owner's rights." *Peters Griffin Woodward, Inc. v. WCSC, Inc*., 88 A.D.2d 883, 883 (1st Dep't 1982); *Emps.' Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 105 (1927). To state a claim for conversion under New York law, the defendant must have acted without authorization, exercised dominion or right of ownership over property belonging to the plaintiff, and refused the plaintiff's demand for return of that property. *Id.*

Defendant's conduct meets the standard. He misappropriated digital assets that were not his and established dominion and control over them.[5] (Durairaj Decl. ¶¶ 7-10.) Defendant has no rightful claim to this property. (*Id.*) He obtained it by fraud and misrepresentation. (*Id.*) Mango Labs demanded that he return the property, but Defendant refused. (*Id.* ¶ 12.) He retains approximately $47 million. (*Id.* ¶ 14.) As a direct and proximate result of Defendant's conversion, Mango Labs incurred damage. (*Id.*) These facts support a conversion claim based on Defendant's misappropriation of digital assets from Mango Markets depositors. *Lagemann v. Spence*, No. 18 Civ. 12218 (GBD) (RWL), 2020 WL 7384009, at *4 (S.D.N.Y. Dec. 16, 2020) (granting summary judgment against defendant for conversion of cryptocurrency assets).

---

[5] The assets in question were originally owned by MNGO token holders who subsequently assigned their claims against Defendant to Mango Labs. (Durairaj Decl. ¶ 5.)

### 2. Fraudulent Misrepresentation

Mango Labs' second claim is based on Defendant's misrepresentations to Mango Markets depositors that he was a legitimate trader, and his omission of material information about his multiple cryptocurrency accounts. (Durairaj Decl. ¶¶ 8-10.) The elements of a fraudulent misrepresentation cause of action are as follows: (1) defendant made a materially false representation, (2) defendant intended to defraud the plaintiff thereby, (3) plaintiff reasonably relied upon the representation, and (4) plaintiff suffered damage as a result of such reliance. *Rana v. Islam*, 305 F.R.D. 53, 59 (S.D.N.Y. 2015) (upholding fraudulent misrepresentation claim).

It is indisputable Defendant misrepresented to Mango Markets depositors (who have assigned their claims to Mango Labs) that he was a legitimate trader when, in reality, he was manipulating the market. (Durairaj Decl. ¶¶ 8-10.) Defendant omitted the key information that he created two accounts to trade with himself. (*Id.* ¶¶ 9-10.) He also concealed that he made fake accounts on other exchanges and tried to manipulate the MNGO price utilizing those accounts. (*Id.* ¶ 10.) Defendant used a fake name and identity to conduct his trades on at least one other platform. (*Id.* ¶ 8.) He did this to inflate the MNGO price on other exchanges without detection so that the oracle that Mango Markets used would inflate the MNGO spot price on Mango Markets. (*Id.* ¶ 9.) Other depositors relied on Defendant's misrepresentation in conducting trades to which he was a counterparty. (*Id.* ¶ 10.) Defendant knew that the other depositors relied on this false information and intended that they would. As to harm, Defendant's market manipulation damaged Mango Markets' depositors because he liquidated all their assets on the platform and took them under his own wrongful control. (*Id.* ¶¶ 9, 14.) Market manipulation in other contexts supports a misrepresentation claim. *See, e.g., Sharette v.*

*Credit Suisse Int'l*, 127 F. Supp. 3d 60 (S.D.N.Y. 2015) (market manipulation supported fraudulent misrepresentation claim).

### 3. Unjust Enrichment

Mango Labs' unjust enrichment claim arises from Defendant's inequitable enrichment of himself with the misappropriated funds from Mango Markets' depositors. To state a claim for unjust enrichment under New York law, a plaintiff must allege: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)) (upholding unjust enrichment claim based on market manipulation).

Defendant's conduct meets this standard. Defendant reaped benefits from inducing other traders to invest in a fraudulent scheme at their expense. (Durairaj Decl. ¶ 10.) It would be against the fundamental principles of justice, equity, and good conscience for Defendant to retain the $47 million in unfairly begotten gains resulting from his inequitable market manipulation. *See Shi v. Le*, No. 21 CV 1361 (ARR) (CLP), 2022 WL 1085420, at *6 (E.D.N.Y. Mar. 2, 2022), *report and recommendation adopted*, No. 21-CV-1361-ARR-CLP, 2022 WL 896963 (E.D.N.Y. Mar. 28, 2022) (finding that it would be inequitable to allow defendant to retain misappropriated cryptocurrency assets).

### 4. Declaratory Judgment

Mango Labs' declaratory judgment claim asks the Court to rule that the purported claims release Defendant forced Mango DAO, under duress, to execute with him is invalid.[6] (Durairaj

---

[6] MNGO token-holders, including Mango Markets depositors who assigned their claims to Mango Labs, had no choice but to vote for Defendant's sham proposal. (Durairaj Decl. ¶ 13.) Thus Mango Labs, the assignee of Mango Markets depositors' claims, has standing to seek a declaratory judgment on the validity of the purported release.

Decl. ¶ 12.) "To void a contract on the ground of economic duress, the complaining party must show that its agreement was procured by means of: (1) a wrongful threat that (2) precluded the exercise of its free will." *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011); *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 127 (S.D.N.Y. 2012), *aff'd*, 556 F. App'x 56 (2d Cir. 2014).[7] "A release may be invalidated . . . for any of the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011) (citation omitted).

The Mango DAO vote does not form a valid settlement agreement because it is unenforceable due to duress. (Durairaj Decl. ¶ 13.) Defendant misappropriated all the liquidity on Mango Markets due to unlawful market manipulation. (*Id.* ¶ 7.) After successfully executing his scheme, Defendant demanded a ransom, putting the Mango DAO into the position that it was forced to vote on his purported settlement agreement. (*Id.* ¶ 12.) Defendant threatened not to return any of the misappropriated funds if the vote did not go his way. (*Id.*) This is not hard bargaining. It is textbook duress. *See, e.g.*, *Austin Instrument*, 29 N.Y.2d at 131 (finding duress when there was no choice but to accept the deal). The depositors who assigned their claims to Mango Labs knew that, as MNGO token-holders, if they did not agree to Defendant's terms, he would simply run off with the funds. (*Id.* ¶ 13.) Indeed, he ended up doing so with the remainder. (*Id.* ¶ 14.) Even the form of the purported agreement, assignees did not negotiate or even understand. (*Id.* ¶ 13.) The Mango DAO agreed to Defendant's language and wording because there was no choice otherwise. (*Id.*) Courts in such situations "will not enforce an

---

[7] *See also Derenoncourt v. Costco Cos.*, No. 97 CIV. 3618 (DLC), 1998 WL 883305, at *4 (S.D.N.Y. Dec. 16, 1998) (finding plaintiff showed a sufficient dispute of fact as to duress); *Worth Const. Co. v. I.T.R.I. Masonry Corp.*, No. 98 CIV. 2536 (CM), 2001 WL 209924, at *9 (S.D.N.Y. Feb. 21, 2001) (same); *Austin Instrument, Inc. v. Loral Corp.*, 29 N.Y.2d 124, 131 (1971) ("the evidence makes out a classic case, as a matter of law, of [economic] duress").

13

agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to do an unlawful injury." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001); *KiSKA Const. Corp.-US v. G & G Steel, Inc.*, No. 04-CV-9252-CSH, 2005 WL 1225944, at *5 (S.D.N.Y. May 20, 2005) (unlawful threat made terms of settlement unenforceable due to duress because it permitted no other alternative).

C. **The balance of hardships weighs in favor of Mango Labs.**

If a party establishes that the balance of hardships tips "decidedly in the plaintiff's favor," then it need not show a likelihood of success on the merits. *Red Earth LLC*, 657 F.3d at 143. All that is required if the balance of hardships tips towards the plaintiff is a "serious question going to the merits to make them a fair ground for trial." (*Id.*)  Here, Mango Labs has raised such a question. To the extent Defendant may dispute the claims referenced above in subsection (D), there is more than enough alleged and supported by evidence to make these claims fair ground for trial.

"[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Greenlight Cap.*, 2013 WL 646547, at *9 (citation omitted). It tips decidedly in favor of Mango Labs here. Defendant is already detained in custody. He will not be harmed by the requested injunctive relief. He has more than enough assets, apart from those Mango Labs seeks to freeze, to fund any legal expenses he may have. In fact, he used at least $10 million dollars to initiate his attack on Mango Markets. (Durairaj Decl. ¶ 9.) Mango Labs, on the other hand, will be harmed if it is unable to recover the funds Defendant misappropriated.

D. **The public's interest weighs in favor of granting an injunction.**

A preliminary injunction should issue if the public's interest weighs in favor of granting it. *Red Earth LLC*, 657 F.3d at 143. This is so here. Defendant has already used the

misappropriated funds to attack others. (Durairaj Decl. ¶ 16.) He has been indicted by a grand jury and also has been sued by the CFTC and the SEC—all actions alleging that Defendant's conduct harmed the public. An injunction here also has the added benefit of deterring others from attempting similar attacks to Defendant's and will protect the public engaged in cryptocurrency markets. *See*, *e.g.*, *Lazor v. Univ. of Conn.*, 560 F. Supp. 3d 674, 685 (D. Conn. 2021) (deterrence of future violations served the public interest and supported the grant of a preliminary injunction); *see also Concheck v. Barcroft*, No. 2:10-cv-656, 2010 WL 4117480, at *3 (S.D. Ohio Oct. 18, 2010) (public interest served where a preliminary injunction may deter others from orchestrating fraudulent investment schemes); *Westernbank Puerto Rico v. Kachkar*, No. 07-1606 (ADC/BJM), 2008 WL 8089778 (D.P.R. July 23, 2008) (granting preliminary injunction freezing assets in part because granting the injunction served the public interest in deterring future fraud schemes).

## II. A TEMPORARY RESTRAINING ORDER PENDING THE COURT'S ADJUDICATION OF PLAINTIFF'S PRELIMINARY INJUNCTION REQUEST IS MERITED

The Second Circuit's standard for a temporary restraining order is the same as the preliminary injunction standard. *Leddy*, 2022 WL 2978620, at *4. For all the reasons explained in subsection (D), a temporary restraining order should issue pending the Court's adjudication of Mango Labs' preliminary injunction request.[8] Between now and that determination, Defendant will have ample time and opportunity to secrete and dissipate the assets he converted. (Barbara

---

[8] Because of the risk that Defendant will conceal assets upon notice of Mango Labs injunction and temporary restraining order requests, Mango Labs did not provide notice of this request to Defendant. (Burshteyn Decl. ¶ 4.)

Decl. ¶ 9.) He has already been moving assets, including through at least one offshore cryptocurrency exchange. (*Id.* ¶ 5.)[9]

## CONCLUSION

For these reasons, and those discussed above, Mango Labs respectfully requests that the Court grant Plaintiff's request for a preliminary injunction enjoining Defendant from dissipating the assets he converted from Mango Markets, and a temporary restraining order while it is pending.

Dated: New York, New York　　MORRISON & FOERSTER LLP
　　　　January 25, 2023

　　　　　　　　　　　　　　　By:　　*/s/ J. Alexander Lawrence*
　　　　　　　　　　　　　　　　　　J. Alexander Lawrence
　　　　　　　　　　　　　　　　　　250 W. 55th Street
　　　　　　　　　　　　　　　　　　New York, New York 10019
　　　　　　　　　　　　　　　　　　Telephone: 212.468.8000
　　　　　　　　　　　　　　　　　　Facsimile: 212.468.7900
　　　　　　　　　　　　　　　　　　Email: ALawrence@mofo.com

　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff Mango Labs, LLC*

---

[9] Mango Labs reserves the right to move for a prejudgment attachment pursuant to Federal Rule of Civil Procedure 64 and N.Y. C.P.L.R. § 6212(a).