J. ALEXANDER LAWRENCE
ALawrence@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: 212.468.8000
Facsimile: 212.468.7900

WILLIAM FRENTZEN (*pro hac vice* forthcoming)
WFrentzen@mofo.com
MICHAEL BURSHTEYN (*pro hac vice* forthcoming)
MBurshteyn@mofo.com
LARA MCDONOUGH (*pro hac vice* forthcoming)
LMcDonough@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: 415.268.7000
Facsimile: 415.268.7500

RAFAEL YAKOBI (*pro hac vice* forthcoming)
rafael@thecryptolawyers.com
THE CRYPTO LAWYERS, PLLC
848 Brickell Avenue, Penthouse 5
Miami, Florida 33131
Telephone: 619.317.0722

*Attorneys for Plaintiff Mango Labs, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

MANGO LABS, LLC,

                Plaintiff,

-against-

AVRAHAM EISENBERG,

                Defendant.

---------------------------------------------------------------- x

Civ No.   23-cv-665

**DECLARATION OF DAFYDD DURAIRAJ IN SUPPORT OF MANGO LAB, LLC'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

SF-5373984

I, Dafydd Durairaj, submit this declaration in support of Plaintiff Mango Labs LLC's ("Mango Labs") Application for a Temporary Restraining Order and Preliminary Injunction against Defendant Avraham Eisenberg ("Defendant"). I am a member of Mango Labs, LLC. I have personal knowledge of the matters set forth below and, if called upon to do so, I could and would testify competently thereto.

1. I am the Founder of Mango Labs, which is an entity that conducts forward-looking development for Mango Markets.

2. Mango Markets is a decentralized, non-custodial cryptocurrency exchange. Over $10 billion in transactions have occurred on Mango Markets since its inception.

3. Because it is a decentralized finance platform, no central entity or person governs Mango Markets. The organization that governs the platform is the Mango Decentralized Autonomous Organization ("Mango DAO"). Mango DAO members can vote on governance proposals using the MNGO governance token to make decisions about Mango Markets.

4. Mango DAO maintains the Mango Markets treasury. The treasury primarily serves as an insurance fund. It insures against unexpected fluctuations in the cryptocurrency markets underlying Mango Markets as well as attacks like the one at issue in this action.

5. A nominal amount of the treasury funds, approximately $2.5 million out of approximately $66 million, have also been used to further the development of Mango Markets. This includes funding Mango Labs, an entity tasked with forward-looking development for Mango Markets by the Mango DAO.

6. Before Defendant's October 2022 attack, the Mango DAO treasury contained approximately $66 million in digital assets.

7. I am familiar with Defendant's attack on Mango Markets. On October 11, 2022, Defendant executed his attack against Mango Markets. He manipulated the price of the Mango token ("MNGO") and, through fraud and deception, converted approximately $114 million from Mango Markets depositors into his own accounts.

8. Defendant took steps to conceal his identity and the flow of his funds to pull off the attack. He did so by using multiple accounts (and at least one false identity) across centralized and decentralized cryptocurrency exchanges. Based on Mango Labs' investigation into Defendant's actions, Defendant violated the contractual Terms of Use of the centralized exchanges he leveraged, including by using a Ukrainian woman's identity to open an account in furtherance of his scheme.

9. Defendant used at least $10 million dollars to initiate his attack on Mango Markets. The mechanics of Defendant's attack involved manipulating the price of the MNGO governance token by inflating prices for that token on three other exchanges. Those prices then impacted an "oracle" (software that reported the MNGO price on Mango Markets from those three exchange inputs) and dramatically raised the price of MNGO on Mango Markets. Defendant had opened two accounts on Mango Markets and used those accounts to place simultaneous long and short positions. When the MNGO price shot up—due to Defendant's coordinated deception across other platforms—Defendant used his long position to liquidate all the collateral on Mango Markets. This enabled Defendant to drain all liquidity from the platform, $114 million in digital assets, and misappropriate those assets for his own purposes.

10. Defendant did not disclose during his attack that he had no intention of repaying the assets he purported to borrow through his positions on Mango Markets. Defendant also did not disclose that he had created multiple accounts on Mango Markets, that he had violated the

Terms of Service of other cryptocurrency exchanges to set up his attack, or that he had used at least one false identity to open one of his accounts used in the attack. Mango depositors relied on Defendant's misrepresentations when they conducted trades to which he was a counterparty.

11. That same day, Defendant identified himself as the perpetrator of the attack on his personal Twitter account. He publicly stated that he worked with a "team" and that this same "team" helped him attack Mango Markets. He also described his attack as a "highly profitable trading strategy." Attached as **Exhibit A** are true and correct copies of Defendant's public statements on these issues.

12. Members of the Mango DAO demanded that Defendant return the misappropriated funds, but Defendant refused. Defendant threatened not to return any of the funds unless Mango Labs agreed to vote on a proposal that included the following language: *"By voting for this proposal, mango token holders agree to pay off the bad debt with the treasury, and waive any potential claims against accounts with bad debt, and will not pursue criminal investigations or freezing of funds once the tokens are sent back as described above."* Attached as **Exhibit B** is a true and correct copy of a screen shot of the proposal Defendant forced Mango DAO to pass.

13. During the negotiations referenced in paragraph 12 and Exhibit B, Mango DAO had no choice but to agree to any demand Defendant made. Based on Defendant's conduct, negotiation would risk Defendant not returning any of the misappropriated funds. Defendant's proposal was unclear and not understandable, but the Mango DAO decided to pass it so that Defendant would return at least some of the funds.

14. Following the Mango DAO vote, Defendant returned approximately $67 million of the money he misappropriated. He retains the remaining $47 million.

15. The Mango DAO voted to transfer digital assets from its insurance fund to depositors from whom Defendant misappropriated funds. In return, those depositors transferred their claims against Defendant to Mango Labs. So far, depositors who lost assets as a result of Defendant's attack have agreed to assign over 90% of their claims to Mango Labs to obtain the refund. Attached as **Exhibit C** is a true and correct copy of a screenshot showing the transfer of rights from depositors to Mango Labs.

16. In December 2022, Defendant attempted to attack the AAVE blockchain protocol, which led to liquidation of some of his assets. Attached as **Exhibit D** are true and correct copies of Defendant's public statements regarding his attack on AAVE as well as public reporting about his attack.

17. Further, after controversy over the FTX cryptocurrency exchange was reported in the news, Defendant publicly advertised his "unlimited size" bets on Polymarket, an online prediction market,[1] his purported interest in purchasing a small exchange,[2] and bids to purchase millions of dollars in FTX funds from users.[3] Attached as **Exhibit E** are true and correct copies of Defendant's statements on these topics.

18. Unless Defendant is restrained and enjoined from selling, liquidating, transferring, pledging, or otherwise encumbering any of the assets he misappropriated pending the resolution of this Action or, there is a significant risk that he will dissipate or lose those assets. This would risk irreparable harm to Mango Labs by preventing its recovery of the misappropriated assets.

---

[1] https://twitter.com/avi_eisen/status/1589607443344265216?s=20&t=5yeAq2orRIP8Ii23HVIX7w.
[2] https://twitter.com/avi_eisen/status/1590141888769642496?s=20&t=5yeAq2orRIP8Ii23HVIX7w.
[3] https://twitter.com/avi_eisen/status/1591065062097424385?s=20&t=5yeAq2orRIP8Ii23HVIX7w.

SF-5373984

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of January 2023 at San Francisco, California.

                                                      Dafydd Durairaj

SF-5373984