UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                                                         :

MANGO LABS, LLC,                              :

                                                                         :

                              Plaintiff,            :

                                                                            :      Civil Action No. 1:23-cv-00665-LJL

       v.                                                          :

AVRAHAM EISENBERG,               :

                                                                           :

                              Defendant.        :

                                                                             :
---------------------------------------------------------------- x

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S APPLICATION
FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 3 |
| | A. | The Parties and Their Dispute | 3 |
| | B. | The Parties Settled Their Dispute | 3 |
| | C. | Procedural History | 4 |
| III. | LEGAL STANDARD | | 5 |
| IV. | ARGUMENT | | 5 |
| | A. | Plaintiff Fails to Establish a Likelihood of Success on The Merits | 5 |
| | | 1. Mango Labs Has Not Established Standing | 5 |
| | | 2. The Settlement and Release Agreement is Enforceable | 6 |
| | B. | Mango Labs' Fails to Establish Irreparable Harm | 9 |
| | | 1. Mango Labs' Delay in Seeking a Preliminary Injunction Confirms that there is No Irreparable Harm | 9 |
| | | 2. Mango Labs Seeks Only Monetary Damages | 10 |
| | C. | The Public Interest Is Not Served by Voiding Negotiated Settlements | 12 |
| V. | THE PROPOSED ORDER LACKS THE REQUISITE SPECIFICITY | | 13 |
| VI. | MANGO LABS SHOULD BE REQUIRED TO POST A BOND EQUIVALENT TO ANY AMOUNT RESTRAINED | | 14 |
| VII. | CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anita Foundations, Inc. v. Ilgwu Nat. Retirement Fund*,
    902 F.2d 185 (2nd Cir. 1990)..................................................................................12, 13

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    910 F.2d 1049 (2d Cir. 1990).............................................................................................14

*Borey v. Nat'l Union Fire Ins. Co.*,
    934 F.2d 30 (2d Cir. 1991).................................................................................................11

*Citibank, N.A. v. Citytrust*,
    756 F.2d 273 (2d Cir. 1985)..........................................................................................9, 10

*City of New York v. Mickalis Pawn Shop, LLC*,
    645 F.3d 114 (2d Cir. 2011)...............................................................................................13

*Davis & Associates, Inc. v. Health Mgmt. Services, Inc.*,
    168 F.Supp.2d 109 (S.D.N.Y.2001).....................................................................................7

*Doe v. U.S. Merch. Marine Acad.*,
    307 F. Supp. 3d 121 (E.D.N.Y. 2018) ...............................................................................11

*Dong v. Miller*,
    No. 16CV5836NGGJO, 2018 WL 1445573 (E.D.N.Y. Mar. 23, 2018) ................................11

*E.E.O.C. v. Am. Exp. Pub. Corp.*,
    681 F.Supp. 216 (S.D.N.Y.1988) ........................................................................................8

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009)................................................................................................5

*Fayard v. Henry Holt & Co., Inc.*,
    726 F.Supp. 438 (S.D.N.Y.1989) ........................................................................................8

*Flatiron Health, Inc. v. Carson*,
    No. 19 CIV. 8999 (VM), 2020 WL 257505 (S.D.N.Y. Jan. 17, 2020), *order
    superseded*, 602 F. Supp. 3d 482 (S.D.N.Y. 2020).................................................................14

*Hasbrouck v. BankAmerica Housing Svcs.*,
    187 F.R.D. 453 (N.D.N.Y.1999) ..................................................................................12, 13

*Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*,
    No. 21-cv-38, 2021 WL 535485 (S.D.N.Y. Feb. 12, 2021) ......................................................9

*Indus. Recycling Sys., Inc. v. Ahneman Assocs., P.C.*,
　892 F. Supp. 547 (S.D.N.Y. 1995) ...................................................................................8

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*,
　655 F.3d 136 (2d Cir.2011)...............................................................................................7

*Johnson as Tr. of Johnson Fam. Tr. v. Saba Cap. Mgmt.*,
　L.P., No. 22 CIV. 4915 (AT), 2023 WL 1345717 (S.D.N.Y. Jan. 31, 2023).........................10

*Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*,
　323 F. Supp. 2d 525 (S.D.N.Y. 2004)..........................................................................14, 15

*Livery Round Table, Inc. v. New York City FHV & Limousine Comm'n*,
　No. 18-CV-2349 (JGK), 2018 WL 1890520 (S.D.N.Y. Apr. 18, 2018) ..............................10

*Loveridge v. Pendleton Woolen Mills, Inc.*,
　788 F.2d 914 (2d Cir. 1986)............................................................................................11

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)...................................................6

*Mandavia v. Columbia Univ.*,
　912 F. Supp. 2d 119 (S.D.N.Y. 2012), *aff'd*, 556 F. App'x 56 (2d Cir. 2014).........................9

*Marcy Playground, Inc. v. Capitol Records, Inc.*,
　6 F. Supp. 2d 277 (S.D.N.Y. 1998) ................................................................................10

*Monowise Ltd. Corp. v. Ozy Media, Inc.*,
　17-CV-8028 (JMF), 2018 WL 2089342 (S.D.N.Y. May 3, 2018) ........................................9

*Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*,
　65 F.3d 562 (7th Cir. 1995) ..............................................................................................7

*Reid v. IBM Corp.*,
　No. 95 CIV. 1755 (MBM), 1997 WL 357969 (S.D.N.Y. June 26, 1997) .............................7

*Richard A. Leslie Co., Inc. v. Birdie, LLC*,
　No. 07 Civ. 5933, 2007 WL 4245847 (S.D.N.Y. Nov. 26, 2007) .......................................10

*Salinger v. Colting*,
　607 F.3d 68 (2d Cir. 2010)...............................................................................................5

*Shenzhen Chengront Tech. Co. v. Besign Direct*,
　No. 1:22-CV-10281 (JLR), 2022 WL 17741496 (S.D.N.Y. Dec. 9, 2022)...........................10

*Springer v. U.S. Bank Nat'l Ass'n*,
　No. 15-cv-1107, 2015 WL 9462083 (S.D.N.Y. Dec. 23, 2015).............................................6

*Tucker Anthony Realty Corp. v. Schlesinger*,
   888 F.2d 969 (2d Cir. 1989) ................................................................................................... 11

*Two Hands IP LLC v. Two Hands Am., Inc.*,
   563 F. Supp. 3d 290 (S.D.N.Y. 2021) ..................................................................................... 10

*VKK Corp. v. Nat'l Football League*,
   244 F.3d 114 (2d Cir. 2001) ..................................................................................................... 7

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
   423 F.3d 137 (2d Cir. 2005) ..................................................................................................... 9

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ..................................................................................................................... 5

*XL Specialty Ins. Co. v. Level Glob. Invs., L.P.*,
   874 F. Supp. 2d 263 (S.D.N.Y. 2012) ....................................................................................... 5

**Rules**

Fed. R. Civ. P. 7.1 ............................................................................................................................ 6

Fed. R. Civ. P. 65 ................................................................................................................ 3, 13, 14

Defendant Avraham Eisenberg ("Defendant" or "Mr. Eisenberg") respectfully submits this Opposition to the Application of Plaintiff Mango Labs, LLC ("Plaintiff" or "Mango Labs") for a Preliminary Injunction (ECF No. 6, "PI Motion").

## I.     INTRODUCTION

Feigning supposed "irreparable" injury from alleged economic losses arising from an October 2022 settlement and release agreement ("Settlement Agreement") between Mr. Eisenberg and members of the Mango Markets Decentralized Autonomous Organization (collectively, "Mango Markets"), Mango Labs—a non-party to the Settlement Agreement that purportedly acquired claims to pursue Mr. Eisenberg from Mango Markets (and lacks standing)—belatedly seeks "emergency" injunctive relief from this Court to secure its potential monetary damages.  The only explanation for Mango Labs' improper three-month delay in seeking to restrain Mr. Eisenberg's assets is that it wants to take advantage Mr. Eisenberg's detention since late December 2022 on criminal charges relating to his trading with Mango Markets.  Mr. Eisenberg has entered a plea of not guilty to these charges and is vigorously defending himself.  Despite its machinations as to its capacity to bring this action and mischaracterizations of Mr. Eisenberg's conduct, Mango Labs fails to show that its deficient allegations state a cognizable clai,m let alone support the extraordinary relief requested in the PI Motion. Mango Labs presents a woefully incomplete and, in many instances, outright false narrative. In reality, Mango Labs' does not come close to satisfying the requirements for the extraordinary remedy of a preliminary injunction, and in particular fails to demonstrate a likelihood of success on the merits or irreparable harm.

***No Likelihood of Success on the Merits.***  Mango Labs acknowledges that Mr. Eisenberg and Mango Markets entered into the binding Settlement Agreement to resolve a dispute concerning a series of trades made by Mr. Eisenberg on the Mango Markets trading platform.  Mango Labs

1

further acknowledges that, unless this Settlement Agreement is deemed unenforceable, its claims—for conversion, fraudulent misrepresentation, and unjust enrichment—are dead in the water.

Yet, Mango Labs offers just one argument in favor of voiding the Settlement Agreement—"duress." Mango Labs now claims that Mango Markets had "no choice" but to vote in favor of the Settlement Agreement. Mango Labs provides zero evidence in support of this theory. Most egregiously, Mango Labs fails to inform the Court that the Settlement Agreement approved by Mango Markets was the *second* proposal presented. The first settlement proposal was *rejected* by Mango Markets, thus, undermining the notion that the voters were under any duress. Moreover, Mango Labs' "duress" theory fails as a matter of law. Duress merely renders a contract *voidable,* not void. By Mango Labs' own admission, Mango Markets accepted the Settlement Agreement's benefits, including approximately $67 million in funds from Mr. Eisenberg. Therefore, any suggestion of "duress" is more than three months too late.

*No Irreparable Harm.* This three-month delay in bringing suit also undermines any alleged irreparable harm. Courts in the Second Circuit have long declined to grant preliminary injunctions when faced with similar delays because it confirms that there is no true urgency. Here, Mango Labs waited more than three months after the relevant events (and after this matter was settled) before seeking a preliminary injunction. Notably, its Complaint and PI Motion are silent as to a reason for the delay. In all likelihood, Mango Labs witnessed third parties bringing claims against Mr. Eisenberg (none of whom have sought preliminary injunctions) and crafted a scheme to get in on the action. Indeed, the only person to benefit from this case is Mr. Durairaj, the founder of Mango Markets and sole owner of Mango Labs.

*No Showing of Damages*. Not surprisingly, Mango Labs does not present a cohesive story

as to its relationship with Mango Markets (i.e., how it supposedly has standing here), the damage it has supposedly suffered, or why the alleged harm could not be remedied by a monetary award. These failures of proofs warrant denial of the PI Motion.

***Specificity as to Restraint and Bond Required If PI Motion Granted.*** In the event the Court determines that a preliminary injunction is warranted, the form of the preliminary injunction order proposed by Mango Labs must be clarified to comport with the requirements of Rule 65(d)(1)(C). And Mango Labs should be required to post a bond equivalent to any amount restrained.

Accordingly, as demonstrated below, the existing temporarily restraining order ("TRO") should be dissolved and Mango Labs' request for preliminary injunctive relief denied.

## II.     FACTUAL BACKGROUND

### A.     The Parties and Their Dispute

Mango Markets is a decentralized exchange for trading cryptocurrency and other crypto assets. Mango Markets is governed by MNGO token holders via the Mango DAO or "Decentralized Autonomous Organization." Mango Labs is an entity owned by Dafydd Durairaj, who was one of the founders of Mango Markets. (ECF No. 9, "Durairaj Decl." ¶1). Mr. Eisenberg is an investor and cryptocurrency trader. On or about October 11, 2022, a series of trades were made on the Mango Markets platform that resulted in the platform becoming insolvent ("October Trades"). Mr. Eisenberg subsequently acknowledged involvement with these trades.

### B.     The Parties Settled Their Dispute

Immediately after the October Trades, Mango Markets and Mr. Eisenberg engaged in discussions towards resolving the matter. (Durairaj Decl. ¶¶12-13). On October 11, 2022, an initial settlement proposal was presented for voting ("the First Proposal"). (Berkowitz Decl., Ex. 1&2). Mango Markets users voted decidedly against the First Proposal. (*Id.*). On October 14,

2022, after further discussions, Mr. Durairaj presented a second proposal with the aim of resolving the matter for all involved ("the Second Proposal"). (ECF No. 9-2 at 3). Specifically, the proposal put forth by Mr. Durairaj provided that: (1) Mr. Eisenberg would return a portion of his gains; (2) the Mango DAO treasury would cover any remaining "bad debt in the protocol" (making all users whole); (3) any claims against Mr. Eisenberg would be waived; and (4) Mango Markets' members would not pursue any freezing of Mr. Eisenberg's funds. (*Id.*). The Second Proposal (herein, the "Settlement Agreement") "passed" decisively. (*Id.*).

Per the Settlement Agreement, Mr. Eisenberg transferred funds totaling approximately $67 million to Mango Markets. (*Id.* ¶14). Several weeks later, eligible Mango Markets' members received reimbursement from the Mango Markets treasury. (*Id.* ¶15). At that point, all involved considered this matter closed and Mr. Eisenberg heard nothing further from Mango Markets, Mango Labs, Mr. Durairaj or anyone else purportedly affiliated with these entities.

### C.   Procedural History

On December 23, 2022, a complaint was filed in this Court by the United States against Mr. Eisenberg alleging violations of the commodities laws. (ECF No. 10-1). On January 9, 2023, a civil complaint was filed in this Court by the Commodity Futures Trading Commission ("CFTC") against Mr. Eisenberg under The Commodity Exchange Act and Commission Regulations. A third action was initiated on January 20, 2023, by the United States Securities and Exchange Commission against Mr. Eisenberg. All of these actions relate to the October 2022 Trades.

On January 25, 2023, more than three months after the Settlement Agreement was entered, Mango Labs initiated the instant action against Mr. Eisenberg. (ECF No. 1, "Complaint"). The four count Complaint purports to bring claims for: (1) conversion; (2) fraudulent misrepresentation; (3) unjust enrichment; and (4) a declaratory judgment "rescinding the

4

settlement and release agreement and declaring it unenforceable" (Compl. ¶88). The same day, Mango Labs filed an Application for a Temporary Restraining Order and Preliminary Injunction. (ECF No. 6). An Order to Show Cause, including a temporary restraining order, was entered by the Court on January 30, 2023. (ECF No. 27).

### III. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *XL Specialty Ins. Co. v. Level Glob. Invs., L.P.*, 874 F. Supp. 2d 263, 270 (S.D.N.Y. 2012) (quoting *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010)). To receive a preliminary injunction, Plaintiffs must show (1) "a likelihood of success on the merits," (2) that they are "likely to suffer irreparable injury," (3) that "the balance of hardships tips in [their] favor," and (4) "that the public interest would not be disserved by the issuance of a preliminary injunction." *Salinger*, 607 F.3d at 79–80.

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotation marks and citation omitted). "[T]o satisfy the irreparable harm requirement, [a party] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (citation omitted).

### IV. ARGUMENT

#### A. Plaintiff Fails to Establish a Likelihood of Success on The Merits

##### 1. *Mango Labs Has Not Established Standing*

To satisfy the requirements of Article III standing, a party must show that (1) the party has

suffered an actual or imminent injury in fact, which is concrete and particularized; (2) there is a causal connection between the injury and defendant's actions; and (3) it is likely that a favorable decision in the case will redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id*. at 561, 112 S.Ct. 2130; *see also Springer v. U.S. Bank Nat'l Ass'n*, No. 15-cv-1107, 2015 WL 9462083, at *3 (S.D.N.Y. Dec. 23, 2015).

To begin with, Mango Labs offers no evidence that it had standing to file this suit, and plainly seeks to obfuscate its ownership and function.[1] Mango Labs identifies itself only as "an entity that conducts forward-looking development for Mango Markets." (Durairaj Decl. ¶1). As far as the events surrounding this case, Mr. Durairaj states that Mango Markets "depositors [have] transferred their claims against [Mr. Eisenberg] to Mango Labs." (*Id.* at ¶15). But it is unclear when, how or why these "claims" were transferred—the Settlement Agreement extinguished any purported claims.

Mango Labs also does not identify any harm that it has suffered. And, neither Mr. Durairaj nor Mango Labs identify any specific "depositor" that purported assigned rights to Mango Labs. The sole assignment attached to Mr. Durairaj's declaration appears to show roughly $1,000 being reimbursed to a Mango Market member. (ECF No. 9-3). There is simply no evidence that Mango Labs has standing to invoke federal jurisdiction or seek relief here.

    2.    *The Settlement and Release Agreement is Enforceable*

As discussed, Mango Labs does not dispute that Mango Markets and Mr. Eisenberg entered into the Settlement Agreement, which released Mr. Eisenberg from all claims, including those it seeks to bring here. (Durairaj Decl. ¶12). Nevertheless, Mango Labs argues that the Agreement

---

[1] In contravention of Rule 7.1, Mango Labs initially sought to conceal the fact that Mr. Durairaj is the "sole member" of Mango Labs (*see* ECF No. 14) and the only person to profit from this lawsuit.

6

is unenforceable for one reason—duress. Specifically, Mango Labs now claims that the "Mango DAO had no choice but to agree to any demand [Mr. Eisenberg] made." (*Id.* at ¶13). Mango Labs' arguments are both knowingly false and legally erroneous.

### a) The Facts Omitted by Mango Labs Confirms There Was No Duress

"The party seeking to void a release agreement on grounds of economic duress shoulders a heavy burden." *Davis & Associates, Inc. v. Health Mgmt. Services, Inc.*, 168 F.Supp.2d 109, 114 (S.D.N.Y.2001) (quotation marks and citation omitted). "Because an element of economic duress is . . . present when many contracts are formed or releases given, the ability of a party to disown his obligations under a contract or release on that basis is reserved for extreme and extraordinary cases." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 123 (2d Cir. 2001). "A mere demonstration of financial pressure or unequal bargaining power will not, by itself, establish economic duress." *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir.2011).

Here, Mango Markets *rejected* the First Proposal to settle this matter by an overwhelming majority. However, ***Mr. Durairaj*** (not Mr. Eisenberg) presented the Second Proposal to Mango Markets members ***based on negotiations with Mr. Eisenberg***  The members voted overwhelmingly ***in favor*** of the Second Proposal. If anything, the actual history—which was intentionally omitted from the PI Motion—demonstrates that Mango Markets' members were fully capable of rejecting a proposal that they did not support (i.e., the First Proposal) and accepted one that they found be fair (i.e., the Second Proposal). There is ***zero evidence*** of "duress" by even a single Mango Market member. *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 569 (7th Cir. 1995) ("one cannot successfully claim duress as a defense to a contract when he had an alternative to signing the agreement"); *Reid v. IBM Corp.*, No. 95 CIV. 1755 (MBM), 1997 WL

7

357969, at *7 (S.D.N.Y. June 26, 1997) (rejecting duress claim where "Plaintiff could have rejected the Release and pursued his legal remedies.").

Mr. Durairaj further claims that "Defendant's proposal was unclear and not understandable[.]" (Durairaj Decl. ¶4). But, again, it was **Mr. Durairaj** that negotiated with Mr. Eisenberg and posted the Second Proposal for a vote. (Durairaj Decl., Ex. B at 1). The Agreement required that: (1) Defendant transfer specific amounts of twelve different assets; (2) Plaintiff use funds in the Mango DAO treasury to "cover any remaining bad debt in the protocol"; and (3) "waive any potential claims against" Defendant. (*Id.*). Following passage of the Second Proposal, Defendant upheld his end of the bargain and Mango Markets members were made whole.[2] Mr. Durairaj's belated statements are not supported by the facts.

### b) The Duress Argument Fails as a Matter of Law

Even where a party is subject to duress, the resulting contract is voidable, not void. *See E.E.O.C. v. Am. Exp. Pub. Corp.,* 681 F.Supp. 216, 219 (S.D.N.Y.1988) ("Contracts induced by duress are voidable, not void; acceptance of benefits under the agreement constitutes ratification."); *Indus. Recycling Sys., Inc. v. Ahneman Assocs., P.C.*, 892 F. Supp. 547, 551 (S.D.N.Y. 1995). Mango Labs' purported assignors *accepted at least some of the Settlement Agreement's benefits (e.g., $67 million), thus, ratifying the Agreement.*

It is also well-settled that "one who would repudiate a contract procured by duress, must act promptly, or will be deemed to have elected to affirm it." *Fayard v. Henry Holt & Co., Inc.,* 726 F.Supp. 438, 447 (S.D.N.Y.1989) (citation omitted). Here, it was not until three months after the Settlement Agreement was entered, and after three other entities brought actions against Mr.

---

[2] It was Mr. Durairaj that duped Mango Markets users into releasing Mango Labs and Mr. Durairaj from liability, in order to obtain reimbursements from the Mango DAO treasury that they had already been guaranteed. (*See* Durairaj Decl., Ex. C).

8

Eisenberg, that Mango Labs raised any issue.

"[Mango Labs] invokes the magical word 'duress,' but in so doing [it] merely states a legal conclusion unsupported by enough facts to cross the line into the realm of the plausible." *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 127–29 (S.D.N.Y. 2012), *aff'd*, 556 F. App'x 56 (2d Cir. 2014).  And, any duress (there was none) would at most have rendered the Settlement Agreement voidable, not void. "Because [Mango Markets] later accepted the benefits of the contract, [it] could not claim duress even if [its] claim were otherwise meritorious …." *Id*.

### B. Mango Labs' Fails to Establish Irreparable Harm

#### 1. Mango Labs' Delay in Seeking a Preliminary Injunction Confirms that there is No Irreparable Harm

"Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276–77 (2d Cir. 1985) (citations omitted). "There is no bright-line rule for how much delay is too much, but courts in this Circuit 'typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.'" *Monowise Ltd. Corp. v. Ozy Media, Inc.*, 17-CV-8028 (JMF), 2018 WL 2089342, at *2 (S.D.N.Y. May 3, 2018) (collecting cases); *see also Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, No. 21-cv-38, 2021 WL 535485, at *6 (S.D.N.Y. Feb. 12, 2021).

Here, Mango Labs waited more than three months after the Settlement and Release Agreement was entered before seeking a preliminary injunction. Notably the Complaint and Preliminary Injunction Motion are **silent** as to the reason for the delay.  These facts alone warrant denial of the Motion.  *See Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of

9

irreparable harm that is essential to the issuance of a preliminary injunction."); *Citibank, N.A.*, 756 F.2d at 276–77 (finding that a ten-week delay rebutted a claim of irreparable injury); *Shenzhen Chengront Tech. Co. v. Besign Direct*, No. 1:22-CV-10281 (JLR), 2022 WL 17741496, at *1 (S.D.N.Y. Dec. 9, 2022) ("Generally speaking, several months' delay in seeking injunctive relief indicates Plaintiff will not be irreparably harmed by further delay in getting injunctive relief."); *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 300 (S.D.N.Y. 2021) ("the significant delay [of three months] in bringing the preliminary injunction motion counsels against a finding of irreparable injury"); *Richard A. Leslie Co., Inc. v. Birdie, LLC*, No. 07 Civ. 5933, 2007 WL 4245847, at *2 (S.D.N.Y. Nov. 26, 2007) (finding three-month delay between the filing of suit and motion for preliminary injunction to be "sufficiently long, in and of itself, to warrant denial of preliminary relief"); *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 281 (S.D.N.Y. 1998) (noting that unexcused three-month delay from filing suit to seeking a preliminary injunction weighed against finding of irreparable harm).

Put simply, "it is difficult to credit the plaintiff['s] argument that [it] will suffer immediate and irreparable injury without the issuance of a preliminary injunction in view of the length of time that the plaintiffs waited to seek relief." *Livery Round Table, Inc. v. New York City FHV & Limousine Comm'n*, No. 18-CV-2349 (JGK), 2018 WL 1890520, at *9 (S.D.N.Y. Apr. 18, 2018). And "[w]ithout evidentiary support of irreparable harm, the Court would be entering relief 'as a precautionary measure,' which it cannot do." *Johnson as Tr. of Johnson Fam. Tr. v. Saba Cap. Mgmt.*, L.P., No. 22 CIV. 4915 (AT), 2023 WL 1345717, at *4 (S.D.N.Y. Jan. 31, 2023) (citing *Faiveley Transp. Malmo AB*, 559 F.3d at 119).

    2.  *Mango Labs Seeks Only Monetary Damages*

Even assuming that the Settlement Agreement was found to be unenforceable, at the end of the day this is an action for money damages. Specifically, Mango Labs' Complaint seeks

10

"compensatory, incidental, and consequential damages, in an amount to be determined, for **harms** Mango Labs suffered…." (Compl., Prayer for Relief ¶1). These "harms" can all be addressed with money damages and do not warrant the extraordinary remedy of injunctive relief. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) ("The injury must be one requiring a remedy of more than mere money damages [and] [a] monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation."); *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 918 (2d Cir. 1986) ("[W]here money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law."); *Doe v. U.S. Merch. Marine Acad.*, 307 F. Supp. 3d 121, 142–43 (E.D.N.Y. 2018) ("A preliminary injunction is generally not appropriate where monetary damages will serve as adequate compensation.").

Further, "[m]onetary loss alone will generally not amount to irreparable harm ... unless the movant provides evidence of damage that cannot be rectified by financial compensation." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991).  Mango Labs makes no such showing here.  Mango Labs is merely an interloper in the relevant events—it suffered no harm, let alone harm that cannot be adequately compensated by a monetary award.

Mango Labs contends that a preliminary injunction is necessary to prevent Mr. Eisenberg "from transferring or encumbering assets sufficient to satisfy Mango Labs' potential judgment in this action…." (ECF No. 7, "MOL" at 8).  But a "court may not enter a preliminary injunction simply to safeguard [a defendant's] assets in the event that [defendant is] ultimately held liable on these claims." *Dong v. Miller*, No. 16CV5836NGGJO, 2018 WL 1445573, at *9 (E.D.N.Y. Mar. 23, 2018) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund. Inc.*, 527 U.S. 308 (1999)).  Mango Labs cites to the Declaration of Rodrigo Barbara

11

in support of its argument that Mr. Eisenberg "has every incentive to conceal assets to avoid a judgment in this action." (MOL at 7). But the Declaration and supporting exhibits show nothing more than transfers of cryptocurrency ***after*** this matter was settled. No one could have divined that Mango Labs—a third party to the relevant transactions—would attempt to acquire and revive extinguished rights from Mango Markets' members and bring suit in contravention the Settlement Agreement.

Mango Labs does not identify conduct by Mr. Eisenberg that would suggest he intends to (or has the ability to) frustrate a potential judgment against him.[3] Indeed, Mr. Eisenberg has retained counsel and appeared in this action. Mr. Eisenberg is under other obligations, including the forfeiture and the "substitute asset provision" of the Federal Indictment (ECF No. 10-3 at 14-15), that already address and preclude the transfer of funds relating to this matter.

      **C.    The Public Interest Is Not Served by Voiding Negotiated Settlements**

As discussed, Mango Labs' case turns on the premise that Mango Markets members could unilaterally void the Settlement Agreement (after Mr. Eisenberg had performed his part) and assign their claims to Mango Labs. Following this logic, no settlement agreement would ever be safe from attack by third parties. This gamesmanship by Mango Labs (and its sole owner, Mr. Durairaj) is contrary to public policy favoring the "finality and repose" critical to settlement agreements. *See Hasbrouck v. BankAmerica Housing Svcs.*, 187 F.R.D. 453, 458 (N.D.N.Y.1999) ("'Most importantly, a settlement produces finality and repose upon which people can order their affairs.'") (*quoting Hulse v. A.B. Dick Co.*, 162 Misc.2d 263, 267, 616 N.Y.S.2d 424 (N.Y.Sup.Ct.1994)); *Anita Foundations, Inc. v. Ilgwu Nat. Retirement Fund*, 902 F.2d 185, 190 (2nd Cir. 1990) (noting

---

[3] On January 30, 2023, Mango Labs filed the Supplemental Declaration of Rodrigo Barbara (ECF No. 25), which insinuates that Mr. Eisenberg transferred funds *after* the Complaint in this action was filed. As the Exhibits attached the Supplemental Declaration show, this was nothing more than an automated transaction triggered by liquidation of certain positions (*see* ECF No. 25-2).

the importance of "[t]he need for finality" in a settlement agreement). As the Court of Appeals for the Second Circuit has noted, "[c]ourts are wary of disturbing settlements, because they represent compromise and conservation of judicial resources, two concepts highly regarded in American jurisprudence." *Anita Foundations*, 902 F.2d at 190; *see also Hasbrouck*, 187 F.R.D. at 458 (noting "the important public policy of encouraging settlements").

## V.   THE PROPOSED ORDER LACKS THE REQUISITE SPECIFICITY

Rule 65(d)(1) requires that "[e]very order granting an injunction and every restraining order must: ... (B) state its terms specifically; and (C) describe in reasonable detail - and not by referring to the complaint or other document - the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1) (emphasis added). The Second Circuit has explained that "Rule 65(d) is satisfied only if the enjoined party can ascertain from the four corners of the order precisely what acts are forbidden or required." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (internal quotations and citations omitted).

The language in Mango Labs' proposed order does not meet the specificity requirements of Rule 65. As noted, Mango Labs seeks to restrain Mr. Eisenberg "during the pendency of this action from selling, liquidating, transferring, pledging, or otherwise encumbering the ***$47 million dollars' worth of digital assets*** that Defendant allegedly converted form Mango Markets." (ECF No. 27 at 2).

But the Proposed Order does not identify these "digital assets," making it impossible for Mr. Eisenberg to implement. In fact, Mango Labs never explains in the PI Motion where it came up with the amount of $47 million. The only mention of this number is a single statement by Mr. Durairaj that, following execution of the Settlement Agreement, Mr. Eisenberg "retain[ed]" approximately this amount. (Durairaj Decl. ¶14). These vague statements are plainly insufficient to identify what Mango Labs seeks to restrain. *See Mickalis*, 645 F.3d at 146 (vacating an

13

injunction that "prohibit[ed] certain conduct by reference to the amended complaint").

It also appears that the funds that Mango Labs seeks to enjoin include: (1) **Mr. Eisenberg's own initial investments in the October Trades,** which Mango Labs notes is "at least $10 million" (Durairaj Decl. ¶14); and (2) funds arising from claims that have not been assigned to Mango Labs (*Id.* at ¶15 (stating that only a portion of the claims have been assigned)).  Mango Labs has no viable claim to these funds and its Motion does not establish otherwise.  As such, Mango Labs has not provided a Proposed Order that details the exact assets that Mango Labs seeks to retrain or carve out funds to which Mango Labs has no conceivable claim, such as Mr. Eisenberg's own initial investment.

**VI.   MANGO LABS SHOULD BE REQUIRED TO POST A BOND EQUIVALENT TO ANY AMOUNT RESTRAINED**

Rule 65(c) provides that a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The purpose of requiring bond is to "guarantee payment of costs and damages incurred by a party who is wrongfully enjoined or restrained." *Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*, 323 F. Supp. 2d 525, 541 (S.D.N.Y. 2004). The theory underlying Rule 65(c) is that the party seeking the injunction "consents to liability up to the amount of the bond as the price for the injunction." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990).

Here, Mango Labs seeks to restrain "$47 million dollars' worth" of cryptocurrency.  The value of this virtual currency may fluctuate significantly during the pendency of this case.  In the event its case fails, Mango Labs will need to be held responsible for the restraint and resultant loss of value that could be mitigated.  *See Flatiron Health, Inc. v. Carson*, No. 19 CIV. 8999 (VM),

2020 WL 257505, at *3 (S.D.N.Y. Jan. 17, 2020), *order superseded*, 602 F. Supp. 3d 482 (S.D.N.Y. 2020). Accordingly, Mango Labs should be required to post a bond equal to the present value of the currency restrained. *See Johnson Controls*, 323 F. Supp. 2d at 541 (explaining that the amount of the bond is generally "the limit that a wrongfully restrained party may recover")

### VII. CONCLUSION

For the above reasons, the PI Motion should be denied and the temporary restraining order should be dissolved.

Respectfully submitted,

Dated: February 15, 2023　　　　　By: *s/ Mark Berkowitz*
　　　　　　　　　　　　　　　　　　Mark Berkowitz
　　　　　　　　　　　　　　　　　　Richard J.L. Lomuscio
　　　　　　　　　　　　　　　　　　TARTER KRINSKY & DROGIN LLP
　　　　　　　　　　　　　　　　　　1350 Broadway
　　　　　　　　　　　　　　　　　　New York, NY 10018
　　　　　　　　　　　　　　　　　　Tel.: (212) 216-8000
　　　　　　　　　　　　　　　　　　Fax: (212) 216-8001
　　　　　　　　　　　　　　　　　　E-mail: mberkowitz@tarterkrinsky.com
　　　　　　　　　　　　　　　　　　　　　　　rlomuscio@tarterkrinsky.com

***Attorneys for Defendant Avraham Eisenberg***