J. ALEXANDER LAWRENCE
ALawrence@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: 212.468.8000
Facsimile: 212.468.7900

WILLIAM FRENTZEN (*pro hac vice*)
WFrentzen@mofo.com
MICHAEL BURSHTEYN (*pro hac vice*)
MBurshteyn@mofo.com
LARA MCDONOUGH (*pro hac vice*)
LMcDonough@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: 415.268.7000
Facsimile: 415.268.7500

RAFAEL YAKOBI (*pro hac vice*)
rafael@thecryptolawyers.com
THE CRYPTO LAWYERS, PLLC
848 Brickell Avenue, Penthouse 5
Miami, Florida 33131
Telephone: 619.317.0722

*Attorneys for Plaintiff Mango Labs, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
:
MANGO LABS, LLC,                                                 :   Civ No. 1:23-cv-00665-LJL
                                                                 :
                Plaintiff,                             :   **MANGO LABS, LLC'S**
                                                                 :   **REPLY MEMORANDUM OF**
       -against-                                       :   **LAW IN SUPPORT OF ITS**
                                                                 :   **APPLICATION FOR**
AVRAHAM EISENBERG,                                               :   **PRELIMINARY**
                                                                 :   **INJUNCTION**
                Defendant.                             :
                                                                 :
                                                                 :
---------------------------------------------------------------- x

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................................. 1
ARGUMENT ......................................................................................................................................... 2
I.     MANGO LABS HAS STANDING. ........................................................................................ 2
II.    NO ENFORCEABLE SETTLEMENT RESOLVED THIS DISPUTE. ............................ 3
       A.     Mango DAO members voted for Defendant's proposal under duress................... 3
       B.     The settlement is unenforceable apart from duress as well. ................................. 5
III.   MANGO LABS SATISFIES THE IRREPARABLE HARM REQUIREMENT. ............. 6
       A.     Mango Labs brought its claims as expeditiously as possible. .............................. 6
       B.     Dissipating or secreting the assets would irreparably harm Mango Labs. ............ 8
IV.   DEFENDANT'S OTHER ARGUMENTS FAIL. ............................................................. 10
CONCLUSION ................................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Adelphia Supply USA*,
  No. 15-CV-5826 (CBA) (MDG), 2015 WL 10906060 (E.D.N.Y. Nov. 6,
  2015), *aff'd sub nom*, *Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, 670 F.
  App'x 6 (2d Cir. 2016)..................................................................................................7

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
  106 F.3d 11 (2d Cir. 1997).............................................................................................3

*Bastedo v. N. Rose-Wolcott Cent. Sch. Dist.*,
  929 F. Supp. 2d 223 (W.D.N.Y. 2013)..........................................................................6

*Bulman v. 2BKCO, Inc.*,
  882 F. Supp. 2d 551 (S.D.N.Y. 2012)............................................................................8

*Dama S.p.A v. John Does 1-35*,
  113 F. Supp. 3d 686 (S.D.N.Y. 2015)............................................................................8

*Drobbin v. Nicolet Instrument Corp.*,
  631 F. Supp. 860 (S.D.N.Y. 1986).................................................................................9

*Elbit Sys. Ltd. v. Credit Suisse Grp.*,
  842 F. Supp. 2d 733 (S.D.N.Y. 2012)............................................................................6

*Fayard v. Henry Holt & Co.*,
  726 F. Supp. 438 (S.D.N.Y. 1989)............................................................................4, 5

*In re Feit & Drexler Inc.*,
  760 F.2d 406 (2d Cir. 1985).......................................................................................8, 9

*Firemen's Ins. Co. v. Keating*,
  753 F. Supp. 1146 (S.D.N.Y. 1990)...............................................................................9

*Int'l Controls Corp. v. Vesco*,
  490 F.2d 1334 (2d Cir. 1974).........................................................................................8

*King v. Innovation Books*,
  976 F.2d 824 (2d Cir. 1992)...........................................................................................8

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).......................................................................................................2

*Mandavia v. Columbia Univ.*,
  912 F. Supp. 2d 119 (S.D.N.Y. 2012), *aff'd*, 556 F. App'x 56 (2d Cir. 2014).........................3

*Marcy Playground, Inc. v. Capitol Recs., Inc.*,
    6 F. Supp. 2d 277 (S.D.N.Y. 1998) ...................................................................................... 7

*Marks Org., Inc. v. Joles*,
    784 F. Supp. 2d 322 (S.D.N.Y. 2011) ............................................................................... 7, 8

*Metro. Taxicab Bd. of Trade v. City of New York*,
    No. 08 Civ. 7837(PAC), 2008 WL 4866021 (S.D.N.Y. Oct. 31, 2008) .................................. 8

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) .................................................................................................... 3

*MGM-Pathe Commc'ns Co. v. Pink Panther Patrol*,
    774 F. Supp. 869 (S.D.N.Y. 1991) ........................................................................................ 8

*Million Youth March, Inc. v. Safir*,
    18 F. Supp. 2d 334 (S.D.N.Y. 1998) ..................................................................................... 7

*N. Shipping Funds I, L.L.C. v. Icon Cap. Corp.*,
    998 F. Supp. 2d 301 (S.D.N.Y. 2014) ................................................................................... 6

*Roswell Cap. Partners LLC v. Alternative Const. Techs.*,
    No. 08 Civ. 10647(DLC), 2009 WL 222348 (S.D.N.Y. Jan. 30, 2009) ................................. 8

*S.E.C. v. Am. Bd. of Trade, Inc.*,
    830 F.2d 431 (2d Cir. 1987) .................................................................................................. 9

*VKK Corp. v. Nat'l Football League*,
    244 F.3d 114 (2d Cir. 2001) .................................................................................................. 3

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) .................................................................................................. 2

**Statutes & Rules**

18 U.S.C. § 1956 ........................................................................................................................ 10

Fed. R. Civ. P. 7.1 ........................................................................................................................ 2

**INTRODUCTION**

In his opposition, Defendant does not contest that he maliciously attacked Mango Markets. He does not refute that he defrauded every Mango Markets' depositor through his market manipulation. Nor does he refute that he unlawfully converted those depositors' assets to unjustly enrich himself. And he does not dispute that, after fleeing the country in the aftermath of his attack, he spent months hiding the assets, moving them through offshore exchanges, and using them to attack other platforms.[1] The Court has already ruled, and Defendant does not address, that Mango Labs, LLC ("Mango Labs") is likely to prevail on all its claims.

No settlement agreement releases Mango Labs' claims against Defendant. The vote Defendant purports to call a settlement is nothing of the sort. Token holders who voted to pass the "proposal" simply wanted their stolen assets back. They had no choice but to accept Defendant's terms under duress. At the time, they had no idea about the extent of Defendant's fraud, which included using a Ukrainian woman's passport to open an account on a third-party exchange to manipulate Mango's price. They also had no idea that Defendant planned further attacks against Mango Markets. Thus, any purported settlement—and there was none—would have been fraudulently induced and could not cover then-unknown claims.

After Defendant's attack, Mango Labs brought its claims promptly. Defendant had fled the country. Mango Labs was asked to assist with multiple federal investigations into Defendant's actions and did not want to tip Defendant off to those investigations and to the potential of his arrest in the United States. Until authorities arrested Defendant upon his return to the country, Mango Labs faced serious impediments to effecting service on Defendant in this

---

[1] To the contrary, Defendant went on Twitter to brag about his attack and appeared on a YouTube interview podcast to bask in the spotlight following his attack. *See* Unchained Podcast, The Mango Markets Attacker on Whether His "Trade" Was Ethical or Not - Ep. 413 (Oct. 28, 2022), https://www.youtube.com/watch?v=e-y4WmrndQ4.

1

action.[2] Days after the filing of the last of three government cases, Mango Labs filed this action and served Defendant soon thereafter.

All of Defendant's other arguments fail. Courts routinely issue preliminary injunctions to avoid asset secretion and dissipation. The proposed order is specific—Defendant knows exactly which assets are at issue. And no bond is needed because Defendant would not be harmed from any restraint on the assets that he took from Mango Markets.

## ARGUMENT

**I.     MANGO LABS HAS STANDING.**

Article III standing requires that Mango Labs "suffered an 'injury in fact.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Where others assign their claims to Mango Labs, it is "permit[ed]" to "stand in the place of the injured party and satisfy the constitutional requirement of an 'injury-in-fact.'" *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008).[3]

Mango Labs has standing here because the depositors from whom Defendant misappropriated $114 million in digital assets assigned 90% of the value of their claims to Mango Labs.[4] They did so by unambiguously manifesting their consent to do so in return for receipt of a recovery payment from the Mango DAO insurance fund. (ECF No. 1 ¶¶ 49-51; ECF No. 7 at 4; ECF No. 33 at 4.) The assignment process required depositors to unambiguously

---

[2] Federal investigators found that Defendant had fled the country on October 12, 2022. *U.S. v. Eisenberg*, No. 1:23-cr-00010-RMB, ECF No. 1 ¶ 18. He was subsequently arrested in Puerto Rico on December 26, 2022.

[3] Article III standing requires "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. It "must be 'likely[]' that the injury will be redressed by a favorable decision." *Id.* at 561 (citation omitted).

[4] Defendant's opposition brief falsely suggests that Mango Labs did not disclose that its sole member was Dafydd Durairaj. This is wrong. Mango Labs did disclose this in its original Rule 7.1 statement filed concurrent with the Complaint. (ECF No. 4.) Defendant also falsely suggests that Mango Labs will retain recovered assets, when the claims transfer explicitly contained language that Mango Labs intends to transfer recovered assets back to the DAO treasury. (ECF No. 1 ¶ 50.)

affirm their assent to the terms of the assignment. There is no required form for such an assignment, and the Second Circuit routinely enforces similar online click-wrap agreements. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997) (assignment need not come in "a particular form," so long as "the language [of the assignment] manifests [the] intention to transfer"); *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 75 (2d Cir. 2017) (enforcing click-wrap agreement).

The list of depositors' unique digital asset blockchain wallet addresses and times of transfer are publicly available. (Declaration of Dafydd Durairaj ("Durairaj Reply Decl.") ¶ 1.) Mango Labs is essentially operating as a claims recovery vehicle so that depositors do not have to pursue individual claims against Defendant. Mango Labs thus has standing to sue.

## II.   NO ENFORCEABLE SETTLEMENT RESOLVED THIS DISPUTE.

### A.   Mango DAO members voted for Defendant's proposal under duress.

Defendant's conduct is a textbook example of duress. He fraudulently misappropriated all the assets available from Mango Markets depositors. He could set his own terms for return of any amount of the converted assets, and he did so. Mango DAO voters had no choice but to accept Defendant's ransom demand. Defendant's case on this issue is in the employment context and involved claimed duress from a non-party, unlike here where it was Defendant's unlawful threats that created duress. *See Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119 (S.D.N.Y. 2012), *aff'd*, 556 F. App'x 56 (2d Cir. 2014). Defendant's position is absurd. A bank robber cannot extract an agreement to return half the loot and walk away scot-free.

Further, Defendant's failure to address Mango Labs' likelihood of success on its conversion, fraud, and unjust enrichment claims is fatal to his position on duress. A threat to cause "unlawful injury" that precludes the exercise of free will constitutes duress. *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001). Here, Defendant threatened to

unlawfully injure Mango Markets depositors by running off with the assets he misappropriated through conversion, fraud, and unjust enrichment. This threat invalidates the agreement.

Defendant's reference to his first proposal to the Mango DAO further supports Mango Labs' duress claim, despite his argument otherwise. Defendant initially proposed that he keep more than half of the unlawfully misappropriated assets. (Durairaj Reply Decl. ¶ 2.) After that vote failed, Mango DAO voters knew that if they did not accept Defendant's next proposal, whatever it was, they would get none of the assets.[5] They thus had no choice but to accept the second proposal, whereby Defendant continued to unlawfully hold $47 million in misappropriated assets.[6] Rejecting one outlandish proposal from a malicious attacker in order to accept the next outlandish proposal does not constitute arms-length bargaining.

Defendant claims Mango Labs waived its duress argument because it did not instantly repudiate the purported settlement. This is false. Depositors began publicly repudiating the agreement by transferring their claims to Mango Labs within one week of the vote. (Durairaj Reply Decl. ¶ 1.) Mango Labs had immediately begun investigating Defendant's conduct and cooperating with law enforcement to recover the misappropriated assets. (ECF No. 8 ¶ 2.) Defendant, in the meantime, fled the country. He also began moving the assets and attempting to hide them in offshore cryptocurrency exchanges.[7] Defendant's *Fayard* case is inapposite, as

---

[5] Defendant emphasizes that the second proposal was posted to the website by a member of Mango Labs. This is of no import. What passed was the only proposal Defendant would have accepted. He held all the cards.

[6] To the extent Defendant's reference to his initial proposal suggests the assets he retained were a "bug bounty," this is not credible. Dressing up misappropriation by a malicious attacker as a bug bounty does not make the conduct lawful. *United States v. Sullivan*, No. 3:20-cr-00337 (N.D. Cal. 2022), ECF No. 224 (company executive found guilty of criminal conduct for attempting to classify ransom paid for misappropriation of data as a bug bounty).

[7] Defendant's actions contravene his repeated claims throughout the opposition brief that he thought the matter was settled. (ECF No. 35 at 3-4.) Someone in that state of mind would not have fled the country or attempted to secrete converted assets. That Defendant, through his actions, demonstrated he knew his conduct was unlawful and sought to evade U.S. jurisdiction, and is partially why the Court in Defendant's criminal case denied bail. *See U.S. v. Eisenberg*, No. 3:22-mj-01583-BJM, ECF No. 8.

there the plaintiff took no action contrary to the agreement for eight months. *Fayard v. Henry Holt & Co.*, 726 F. Supp. 438 (S.D.N.Y. 1989). Mango Labs here immediately repudiated.

Defendant proffers an incredulous argument that Mango Markets depositors accepted the benefits of the agreement by taking back *their own assets* that Defendant converted. This is unsupported by any case or equitable justification. What Defendant did was unlawful, wrong, and criminal. A grand jury indicted him for it. Returning a portion of fraudulently misappropriated assets provides no benefit to Defendant's victims. Defendant damaged Mango Labs, Mango Markets depositors, and Mango DAO members who assigned claims to Mango Labs. His attack forced the entire platform to shut down.

Defendant claims that enforcing the settlement is in the public interest. Yet his opposition fails to address the public interest in enforcing legal doctrines against unlawful market manipulation through fraud, conversion, and unjust enrichment. (ECF No. 35 at 10-12.) Defendant is facing federal criminal charges as well as multiple cases from government agencies because his actions harmed the public. There is no public interest in enforcing contrived settlements so market manipulators can make off with assets converted from innocent victims.[8]

### B. The settlement is unenforceable apart from duress as well.

Regardless of Mango Labs' duress argument, the vote Defendant claims created a settlement agreement is not an enforceable contract. Its language is incoherent on its face. (ECF No. 7 at 4.) It does not explain who the parties are or what they are settling. Nor is there an explanation as to how a private entity can choose to not pursue criminal investigations. Indeed, the only conceivable reason Mango DAO members voted to pass this incomprehensible proposal

---

[8] Defendant suggests that the public interest in settlement "finality" prevents Mango Labs from voiding the settlement agreement, but Defendant's cited cases do not involve agreements entered into under duress.

is that they had no choice.  Defendant would have simply absconded with all the assets if Mango DAO members did not agree to his terms.

The agreement is unenforceable for the additional reason that Defendant's victims did not know the extent of Defendant's fraud and all potential claims at the time of its vote.  Defendant omitted material information that he manipulated the MNGO token price on other exchanges by using a Ukrainian woman's passport.  Nor did Defendant tell anyone that he had plans to further attack Mango Markets and misappropriate Mango DAO's remaining treasury balance, again by hiding his identity to pull off manipulative acts.  (Durairaj Reply Decl. ¶ 3.)[9]  Thus, Defendant fraudulently induced Mango DAO members to vote for the agreement.  *N. Shipping Funds I, L.L.C. v. Icon Cap. Corp.*, 998 F. Supp. 2d 301, 318 (S.D.N.Y. 2014) ("Settlement agreements, like other contracts, may be rescinded for fraud . . . ."); *see Bastedo v. N. Rose-Wolcott Cent. Sch. Dist.*, 929 F. Supp. 2d 223, 224-26 (W.D.N.Y. 2013) (rescinding settlement for fraudulent inducement).  At a minimum, this means that no depositor waived or released their fraud claims against Defendant.  *Elbit Sys. Ltd. v. Credit Suisse Grp.*, 842 F. Supp. 2d 733, 744 (S.D.N.Y. 2012).  The Court should grant a preliminary injunction for this reason alone.

## III. MANGO LABS SATISFIES THE IRREPARABLE HARM REQUIREMENT.

### A. Mango Labs brought its claims as expeditiously as possible.

Mango Labs did not delay in bringing claims against Defendant.  Immediately after the attack, Mango Labs began cooperating with federal law enforcement.  It also diligently investigated the attack and where Defendant moved the misappropriated assets.  To guard Mango Markets against further attack, DAO members, depositors, and Mango Labs worked to shut

---

[9] This fact too contravenes Defendant's repeated baseless assertions that he considered the matter resolved and had moved on.  He was preparing a second attack.

down the market and develop software to enable depositors to recover funds from the Mango DAO treasury. Mango Labs also, without delay, began accepting claims transfers from depositors to support this enforcement action. (Durairaj Reply Decl. ¶ 1.) Within five days of the filing of the last of three government actions against Defendant, all of which Mango Labs supported with substantial resources, Mango Labs filed this case.[10] This justifies a preliminary injunction. *See*, *e.g.*, *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 333 (S.D.N.Y. 2011) (excusing 16–month delay caused "by good faith efforts to investigate the facts and law").[11] Earlier action would have revealed Mango Labs' efforts to recover its stolen assets and potentially could have revealed the ongoing federal investigations into Defendant. Such an action likely would have caused Defendant to remain overseas and/or take further evasive measures with the assets.

Even assuming *arguendo* the filing was delayed, which it was not, courts excuse delays where "the harm largely is prospective and will arise from a discrete future event." *Million Youth March, Inc. v. Safir*, 18 F. Supp. 2d 334, 340 (S.D.N.Y. 1998). The irreparable harm Mango Labs seeks to guard against here is just such a prospective harm.

Further, district courts in this Circuit have "decline[d] to take the position that delay alone requires denial of a preliminary injunction motion." *Marks Org.*, 784 F. Supp. 2d at 333; *Marcy Playground, Inc. v. Capitol Recs., Inc.*, 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998) ("[T]he Court of Appeals has not yet held that unexcused delay alone necessarily defeats a preliminary

---

[10] Defendant's characterization that Mango Labs saw the other cases against Defendant and wanted to "get in on the action" is false. To the contrary, Mango Labs was aware of every single one of the actions before they were filed. It sought to cooperate with the government first before bringing its own civil action.

[11] "[I]t is not the length of the delay that is determinative, but its reasonableness." *Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (MDG), 2015 WL 10906060, at *10, *12 (E.D.N.Y. Nov. 6, 2015) (finding that plaintiff's delay was "thoroughly explained" and did not negate a showing of irreparable harm), *aff'd sub nom*, *Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, 670 F. App'x 6 (2d Cir. 2016).

injunction motion."). Delay, rather, is only "one of several factors to consider" in the preliminary-injunction analysis. *Marks Org.*, 784 F. Supp. 2d at 333 (citation omitted). Given the other factors here, the Court should grant Mango Labs' request for a preliminary injunction. *See*, *e.g.*, *Metro. Taxicab Bd. of Trade v. City of New York*, No. 08 Civ. 7837(PAC), 2008 WL 4866021, at *6 (S.D.N.Y. Oct. 31, 2008) (delay in seeking injunctive relief does not necessarily bar the requested relief).

Three months while the Defendant is overseas, in any event, is no delay. Multiple courts have granted preliminary injunctive relief where a party brought an action longer than three months after the harm accrued. *See e.g.*, *King v. Innovation Books*, 976 F.2d 824, 831 (2d Cir. 1992) (eight months); *MGM-Pathe Commc'ns Co. v. Pink Panther Patrol*, 774 F. Supp. 869, 873 (S.D.N.Y. 1991) (six months); *Bulman v. 2BKCO, Inc.*, 882 F. Supp. 2d 551, 564-65 (S.D.N.Y. 2012) (delay of several months did not preclude a finding of irreparable harm).

### B. Dissipating or secreting the assets would irreparably harm Mango Labs.

Defendant claims that because Mango Labs seeks a return of (its own) assets, it seeks money damages for which a preliminary injunction should not issue. This is wrong. Courts routinely issue preliminary injunctions in situations like this one, where the defendant is at risk of secreting and dissipating assets. *Dama S.p.A v. John Does 1-35*, 113 F. Supp. 3d 686 (S.D.N.Y. 2015); *Roswell Cap. Partners LLC v. Alternative Const. Techs.*, No. 08 Civ. 10647(DLC), 2009 WL 222348, at *18 (S.D.N.Y. Jan. 30, 2009). "[E]ven where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transfer[ring its assets] out of the jurisdiction." *In re Feit & Drexler Inc.*, 760 F.2d 406, 416 (2d Cir. 1985) (citation omitted); *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1347 (2d Cir. 1974). Defendant's cases on this question are inapposite, as they do not involve the threat of dissipating

8

and secreting digital assets.

Defendant's assurances that he will not dissipate the assets provide cold comfort. He plotted to attack Mango Markets again within a month of the first attack. He then took the converted assets and put them towards attacking other protocols and committing other high-risk maneuvers. (ECF No. 1 ¶ 56; ECF No. 7 at 7-8.) The purportedly automated transfer that occurred after the filing of the Complaint shows that Defendant's accounts are at risk even now. *Firemen's Ins. Co. v. Keating*, 753 F. Supp. 1146, 1153 (S.D.N.Y. 1990) ("It is familiar law that where a non-movant's assets may be dissipated before final relief can be granted . . . such that an award of monetary relief would be meaningless, injunctive relief is proper."); *see also S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 438-39 (2d Cir. 1987).[12] Digital assets, moreover, are uniquely susceptible to hiding. There are multiple examples where people in similar positions as Defendant have successfully moved crypto assets outside of a court's jurisdiction to frustrate a judgment. (ECF No. 7 at 9 (citing *United States v. Qin*, No. 1:21-cr-00075 (S.D.N.Y. Feb 4, 2021)); *United States v. Lichtenstein et al*, No. 1:22-mj-00022 (D.D.C. Feb 7, 2022)).

Finally, Defendant's criminal case does not negate the need for a preliminary injunction. No order on asset forfeiture has been issued there. Any order that would issue out of Defendant's criminal case may only cover assets within the United States. This is insufficient, because Defendant already moved over $30 million of the digital assets to an offshore cryptocurrency exchange. This Court, however, has the power to require Defendant stop such moves and mitigate the risk of irreparable harm to Mango Labs from Defendant's dissipation or secretion of the misappropriated assets.

---

[12] *See also In re Feit & Drexler, Inc*., 760 F.2d at 416 (affirming injunctive relief order); *Drobbin v. Nicolet Instrument Corp*., 631 F. Supp. 860, 912 (S.D.N.Y. 1986) ("Where a plaintiff's injury is theoretically compensable in money damages but, as a practical matter, the defendant would not or could not respond fully for those damages, preliminary injunctive relief has been deemed necessary to protect the plaintiff from irreparable injury.")

## IV.  DEFENDANT'S OTHER ARGUMENTS FAIL.

First, Defendant claims the proposed order does not specify the assets at issue. He, however, knows exactly what assets he took from Mango Markets and where he put them. The $10 million that Defendant placed onto Mango Markets as part of his fraudulent scheme should be enjoined as well. The $5 million short position should have been liquidated, but Defendant conducted his attack to preclude the liquidation software from operating. The long position also should have been liquidated given the massive losses Defendant should have incurred as a result of his fraudulent trades.[13] Defendant, in all, harmed Mango Labs far in excess of the requested amount for injunction.

Second, no bond is needed. None was required for entry of the temporary restraining order. A preliminary injunction is no different. The only basis for a bond would be harm to the Defendant from wrongful restraint. Here, however, Defendant would suffer no harm. He can afford legal representation without recourse to the assets he took from Mango Markets and does not claim otherwise. Defendant has no right to use misappropriated assets to fund his defense of the actions against him. Defendant has used the converted assets for high-risk and unlawful attacks on other platforms. His inability to continue to do these things does not harm Defendant.

## CONCLUSION

Defendant fraudulently manipulated Mango Markets and took off with all of its depositors' assets. He does not contest this. Now these assets are at imminent risk of dissipation and secretion. Mango Labs thus requests the Court convert the temporary restraining order and issue a preliminary injunction.

---

[13] Furthermore, the digital currency Defendant withdrew from Mango Markets were unlawful "proceeds" of his criminal activity and should not be returned to him. *See*, *e.g.*, 18 U.S.C. § 1956. The seed money for a fraudulent scheme is not returnable to the fraudster after he or she is caught.

10

Dated: New York, New York  MORRISON & FOERSTER LLP
February 22, 2023

By: */s/ J. Alexander Lawrence*
 J. Alexander Lawrence
 250 W. 55th Street
 New York, New York 10019
 Telephone: 212.468.8000
 Facsimile: 212.468.7900
 Email: ALawrence@mofo.com

 *Attorneys for Plaintiff Mango Labs, LLC*

11