UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                                                 :
MANGO LABS, LLC,                                                 :
                                                                 :
                    Plaintiff,                                   :
                                                                 :   Civil Action No. 1:23-cv-00665-LJL
         v.                                                      :
                                                                 :
AVRAHAM EISENBERG,                                               :
                                                                 :
                    Defendant.                                   :
                                                                 :
---------------------------------------------------------------- x
                                                                 :
AVRAHAM EISENBERG,                                               :
                                                                 :
                    Counterclaim-Plaintiff,                      :
                                                                 :
         v.                                                      :
                                                                 :
MANGO LABS, LLC; MANGO DAO; and                                  :
DAFYDD DURAIRAJ,                                                 :
                                                                 :
                    Counterclaim and                             :
                    Third-Party Defendants.                      :
                                                                 :
---------------------------------------------------------------- x

**AVRAHAM EISENBERG'S MEMORANDUM IN SUPPORT OF MOTION FOR A
TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

A. Mango Markets, The Parties, and Their Dispute .......... 2

B. The Parties Settled Their Dispute .......... 3

C. Counterclaim-Defendants Breach the Settlement Agreement .......... 4

D. Dissolution of the Mango DAO and Disbursement of Funds from the Treasury .......... 4

III. LEGAL STANDARD .......... 6

IV. AN INJUNCTION SHOULD BE GRANTED .......... 6

A. Mr. Eisenberg Is Likely to Succeed on the Merits of His Claims .......... 6

1. The Settlement Agreement Is Valid .......... 7

2. Counterclaim-Defendants Breached the Agreement .......... 8

B. Mr. Eisenberg Will Be Irreparably Harmed Absent an Injunction .......... 9

C. The Threatened Harm to Mr. Eisenberg Outweighs Any Injury to the Counterclaim-Defendants From an Injunction .......... 10

D. An Injunction Would Not Be Adverse to the Public Interest .......... 11

V. THE COURT SHOULD PRESERVE THE STATUS QUO .......... 12

VI. A BOND SHOULD NOT BE REQUIRED .......... 12

VII. CONCLUSION .......... 13

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Assocs., Inc. v. Distajo*,
  107 F.3d 126 (2d Cir. 1997)..................................................................................................12

*Brenntag Int'l Chems., Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 1999)....................................................................................................9

*Dama S.p.A v. John Does 1-35*,
  113 F. Supp. 3d 686 (S.D.N.Y. 2015)......................................................................................9

*Dykeman v. Ochoa*,
  No. 08-CV-122-B, 2008 WL 11411452 (D. Wyo. July 15, 2008) .........................................11

*E.E.O.C. v. Am. Exp. Pub. Corp.*,
  681 F.Supp. 216 (S.D.N.Y.1988) ............................................................................................8

*Empire Trust, LLC v. Cellura*,
  No. 24-CV-859, 2024 WL 1216729 (S.D.N.Y. Mar. 21, 2024) .............................................12

*Garcia v. Yonkers Sch. Dist.*,
  561 F.3d 97 (2d Cir. 2009).....................................................................................................12

*Lazor v. Univ. of Conn.*,
  560 F. Supp. 3d 674 (D. Conn. 2021)....................................................................................11

*of Metro. Det. Ctr. - Brooklyn v. Fed. Bureau of Prisons*,
  416 F. Supp. 3d 249 (E.D.N.Y. 2019) .....................................................................................6

*Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*,
  65 F.3d 562 (7th Cir. 1995) .....................................................................................................7

*Reid v. IBM Corp.*,
  No. 95 CIV. 1755 (MBM), 1997 WL 357969 (S.D.N.Y. June 26, 1997) ...........................7, 8

*Res. Grp. Int'l Ltd. v. Chishti*,
  No. 25-CV-1021 (JSR), 2025 WL 3034226 (S.D.N.Y. Oct. 30, 2025)..................................10

*Roswell Cap. Partners LLC v. Alternative Const. Techs.*,
  No. 08 Civ. 10647(DLC), 2009 WL 222348 (S.D.N.Y. Jan. 30, 2009) .............................9, 10

*Samuels v. Dao*,
  No. 23-cv-06492-VC, 2024 WL 4815022 (N.D. Cal. Nov. 18, 2024) ....................................2

*Sec. & Exch. Comm'n v. End of Rainbow Partners, LLC*,
   No. 17-CV-02670-MSK, 2017 WL 5404199 (D. Colo. Nov. 14, 2017) .................................11

*UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*,
   660 F.3d 643 (2d Cir. 2011) ..........................................................................................................6

*Wright v. Giuliani*,
   230 F.3d 543 (2d Cir. 2000) ..........................................................................................................6

**Rules**

Fed. R. Civ. P. 65 ....................................................................................................................12

**Other Authorities**

https://www.dlnews.com/articles/defi/mango-markets-insiders-accused-of-dao-
   raid-with-mngo-buyback/ (last accessed January 15, 2026) ........................................................5

https://www.sec.gov/enforcement-litigation/litigation-releases/lr-26140 (last
   accessed January 15, 2026) ..........................................................................................................5

https://www.sec.gov/newsroom/press-releases/2024-154 (last accessed January
   15, 2026) ......................................................................................................................................5

Defendant Avraham Eisenberg ("Defendant" or "Mr. Eisenberg") respectfully submits this Memorandum in Support of his Motion for a Temporary Restraining Order and Preliminary Injunction.

I.      INTRODUCTION

Mr. Eisenberg respectfully requests that this Court maintain the status quo—that has existed for the past three years—for a period of 14 days until a preliminary injunction hearing can be held.  Specifically, Mr. Eisenberg seeks to restrain Plaintiff Mango Labs, LLC ("Mango Labs") and third-party defendants Mango DAO and Dafydd Durairaj (collectively, "Counterclaim-Defendants") from transferring, dissipating or disposing of the assets held in the treasury of the Mango DAO—a decentralized cryptocurrency exchange—and dissolving the Mango DAO.

Counterclaim-Defendants have already taken steps towards these events, including posting the necessary proposals for voting by the Mango DAO.  The voting concluded on Sunday and, following a one day "Cool off" period, becomes effective by 7:32 p.m. tomorrow:




Mr. Eisenberg's claims against Counterclaim-Defendants for breach of contract and fraudulent inducement cannot be seriously contested.  And, if the assets-in-question are disposed, Mr. Eisenberg will have no ability to enforce the 2022 settlement agreement entered into by the Parties and to protect those impacted by Counterclaim-Defendants' breach of the agreement and self-dealing.  Therefore, for the reasons detailed below, a temporary restraining order and

preliminary injunction are warranted.

## II.     FACTUAL BACKGROUND

### A.     Mango Markets, The Parties, and Their Dispute

Mango Markets is an exchange and trading protocol with "decentralized governance." (ECF No. 42-1, Litepaper at 1).[1] Specifically, Mango Markets is governed by MNGO token holders via the Mango DAO or "Decentralized Autonomous Organization." (ECF No. 42-2, Overview at 1; *see also* ECF No. 42-3 at 1 ("MNGO is a governance token whose ownership grants voting rights on proposals to dictate Mango Markets protocol's future.")). "Collectively, the token holders have the power to upgrade the protocol as they see fit, only constrained by the checks-and-balances of the DAO." (ECF No. 42-1 at 6). "Anybody with 0.1% of Mango Token staked can propose a governance action . . . ." (*Id.* at 6). "Proposals are executable code, not suggestions for a team or foundation to implement." (*Id.* at 6). "All proposals are subject to a 3 day voting period, and any Mango Token staker can vote for or against the proposal." (*Id.* at 6). "If a majority, and at least 2% of the total Mango Token supply are cast for the proposal, it . . . can be implemented after 2 days." (*Id.* at 6).

Mango Labs is an entity owned and controlled by Dafydd Durairaj, who was one of the founders of Mango Markets. (Ex. 1, Durairaj Decl. ¶1).[2] Mango Labs, which is nothing more than an alter ego for Mr. Durairaj, has near complete control over the Mango DAO and can freeze MNGO tokens (and, in turn, actions by token holders). (*Id.* ¶¶21, 26; *see also* Ex. 2 ¶29 (explaining the digital wallets owned by Mr. Durairaj routinely received payments from the Mango DAO

---

[1] As used herein, "Ex." refers to the exhibits attached to the January 27, 2026 Declaration of Mark Berkowitz.

[2] Courts have found a DAO was a cognizable entity akin to a partnership with duties flowing among the trusted partners. *See Samuels v. Dao*, No. 23-cv-06492-VC, 2024 WL 4815022, at *5–7 (N.D. Cal. Nov. 18, 2024).

designated for Mango Labs, and vice versa), *id.* ¶35 (discussing Mr. Durairaj's ability to freeze token and grant himself enhanced voting power)).

Mr. Eisenberg is an investor and cryptocurrency trader. On or about October 11, 2022, a series of trades were made on the Mango Markets platform by Mr. Eisenberg that yielded over $100 million in cryptocurrency ("October Trades"). Mr. Eisenberg contended that the trades simply used the trading the protocol as designed, while Counterclaim-Defendants contended that the trades were an improper exploit.

### B.  The Parties Settled Their Dispute

Following the October Trades, Counterclaim-Defendants and Mr. Eisenberg engaged in discussions towards resolving their dispute. On October 11, 2022, an initial settlement proposal was presented for voting ("the First Proposal"). (*See* ECF Nos. 36-1 and 36-2). Mango Markets users voted ***decidedly against*** the First Proposal. (ECF No. 36-2 (just 9.6% of voters were in favor of the proposal)).

On October 14, 2022, after further discussions, Mr. Durairaj personally presented a second proposal to the Mango DAO with the aim of resolving the matter for all involved ("the Second Proposal"). (ECF No. 9-2 at 1-3). Specifically, the proposal put forth by Mr. Durairaj provided that: (1) Mr. Eisenberg would return a portion of his gains totaling approximately $67 million; (2) the Mango DAO treasury would cover any remaining "bad debt in the protocol" (i.e., make all Mango Markets users whole); (3) any claims against Mr. Eisenberg would be waived; and (4) Mango Markets token holders would not pursue any freezing of Mr. Eisenberg's remaining funds. (*Id.*). The Second Proposal (herein, the "Settlement Agreement") "passed" decisively. (*Id.* (96.6% voting in favor of the proposal)).

Per the Settlement Agreement, Mr. Eisenberg promptly transferred funds totaling approximately $67 million to Mango Markets, which funds were placed in the Mango Markets

3

"treasury," i.e., the collection of funds and assets controlled by the Mango DAO ("Mango Treasury"). (Ex. 1, ¶5). Several weeks later, eligible Mango Markets members received reimbursements from the Mango DAO treasury. (*Id.*). At that point, Mr. Eisenberg considered this matter closed.

### C.    Counterclaim-Defendants Breach the Settlement Agreement

Counterclaim-Defendants did not uphold any part of the Settlement Agreement. On January 25, 2023, more than three months after the Settlement Agreement was entered, Mango Labs filed suit in this Court in New York against Mr. Eisenberg, purporting to act on behalf of the Mango DAO ("New York Lawsuit"). (ECF No. 1, "Complaint"). Among other things, the Complaint included a claim for a declaratory judgment "rescinding the settlement and release agreement and declaring it unenforceable" (*Id.* ¶88). The same day, Mango Labs filed an *Ex Parte* Application for a Temporary Restraining Order and Preliminary Injunction seeking to freeze Mr. Eisenberg's funds (in violation of the Settlement Agreement). An Order to Show Cause, including a temporary restraining order, was entered by this Court on January 30, 2023. (ECF No. 27).[3]

After briefing, and hearing on the merits, the New York court denied Mango Labs' motion for a preliminary injunction. (ECF No. 49, Hr'g Tr. at 10:7-22). The court rejected all of Mango Labs' arguments and found that the release provided under the Settlement Agreement between Mr. Eisenberg and the Mango DAO was enforceable. (*Id.* at 10:23-19:14).

### D.    Dissolution of the Mango DAO and Disbursement of Funds from the Treasury

Mango Markets has been largely dormant since late 2022, for a number of reasons. The

---

[3] Defendants also sought criminal prosecution of Mr. Eisenberg, and Defendants took a role in the prosecution and trial. (Ex. 5 ¶6 (Noting that Mr. Durairaj was "heavily involved in the action against Eisenberg")). After trial, the district court overturned the jury's conviction, entering acquittal on one count and vacating the other two for lack of venue. The government has filed a pending appeal.

October Trades discussed above identified flaws in the Mango Markets protocol. In addition, the United States Securities and Exchange Commission filed suit against the Mango DAO and Mango Labs for engaging in the unregistered offer and sale of securities, namely, the MNGO tokens.[4] Mango DAO and Mango Labs subsequently admitted liability, entered into a consent judgment, paid penalties, and agreed to destroy their MNGO tokens.[5]

There has also been considerable in-fighting among the founders of Mango Markets, including a series of lawsuits in the District of Puerto Rico, accusing one another of fraud and double-dealing.[6] However, in late-December 2025 these parties suddenly announced that they had reached a settlement and ***intended to dissolve the Mango DAO***, and disburse the funds in the treasury, within thirty days. (Ex. 3). The Mango DAO treasury currently holds about $45 million (which is comprised of the funds transferred to the Mango Treasury by Mr. Eisenberg as part of the Settlement Agreement). (Ex. 3 ¶16 ("Mango DAO holds a treasury account of approximately $45 million in a variety of cryptocurrency.")). Counterclaim-Defendants began the process of preparing the assets in the Mango Treasury for liquidation, which was handled by Mango Labs. (*See, e.g.*, Ex. 4 (proposal authorizing Mango Labs to liquidate smaller assets on behalf of the Mango DAO)).

Counterclaim-Defendants have now taken the final steps to liquidate the assets in the Mango Treasury and dissolve the Mango DAO. Specifically, a proposal posted on the Mango DAO on January 25, 2026, entitled "Initialize and Fund Distribution Program," provides for Counterclaim-Defendants ***"to dissolve, liquidate, terminate, and wind up the affairs of the***

---

[4] https://www.sec.gov/newsroom/press-releases/2024-154 (last accessed January 15, 2026).
[5] https://www.sec.gov/enforcement-litigation/litigation-releases/lr-26140 (last accessed January 15, 2026).
[6] https://www.dlnews.com/articles/defi/mango-markets-insiders-accused-of-dao-raid-with-mngo-buyback/ (last accessed January 15, 2026).

5

*Mango DAO, including the distribution of treasury assets…."* (Ex. 5 at 1). The proposal, which has already passed, becomes effective on January 28, 2026. (*Id.*).

Mr. Eisenberg's counterclaims seek damages for (1) breach of contract, (2) unjust enrichment and (3) fraudulent inducement. If the Counterclaim-Defendants are successful in liquidating the Mango DAO treasury prior to a resolution in this case, both Mango Markets and Mango DAO will essentially wind up and cease to do business rending any final adjudication in this matter moot. (Ex. 2 ¶1 (noting that Counterclaim-Defendants are "work[ing] together to dissolve the Mango DAO")).[7]

## III. LEGAL STANDARD

To obtain preliminary injunctive relief, a movant must show: (1) that he is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of his case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000). "The standards for a preliminary injunction and temporary restraining order are identical." *Fed. Defs. of New York, Inc. on behalf of Metro. Det. Ctr. - Brooklyn v. Fed. Bureau of Prisons*, 416 F. Supp. 3d 249, 251 (E.D.N.Y. 2019)).

## IV. AN INJUNCTION SHOULD BE GRANTED

### A. Mr. Eisenberg Is Likely to Succeed on the Merits of His Claims

Mr. Eisenberg easily meets the first test for the issuance of a temporary restraining order

---

[7] Mr. Eisenberg initial sought relief in the United States District Court for the District of Wyoming because Mr. Eisenberg contends that personal jurisdiction and venue are not proper in this Court. However, at Counterclaim-Defendants' urging, the Wyoming court dismissed the action based on the first-to-file rule. Mr. Eisenberg continues to reserve his right to raise defenses relating to personal jurisdiction and venue.

6

and preliminary injunction: Mr. Eisenberg has a substantial likelihood of success on the merits of his claims. Mr. Eisenberg is virtually certain to prevail on his breach of contract claim and fraudulent inducement claims, as Counterclaim-Defendants have conceded the salient facts in other proceedings.

### 1.     *The Settlement Agreement Is Valid*

The Counterclaim-Defendants have never disputed that the Mango DAO and Mr. Eisenberg entered into the Settlement Agreement. As noted above, the complaint filed by Mango Labs in the New York Lawsuit readily admitted that the Parties entered into the Settlement Agreement and that Mr. Eisenberg performed under the agreement.

Mango Labs (who claimed that it acquired all claims relating to the October Trades) and Durairaj primarily argued that the Settlement Agreement was unenforceable because it was entered under "duress." (Ex. 8 ¶ 83). This argument was factually and legally meritless (as the New York court confirmed). As detailed above, Mango DAO *rejected* the First Proposal to settle this matter by an overwhelming majority. However, the Mango DAO voted overwhelmingly in favor of the Second Proposal—that ***Mr. Durairaj drafted* and presented to the Mango DAO following negotiations with Mr. Eisenberg**.[8] This history confirms that the Mango DAO was fully capable of rejecting a proposal that they did not support (i.e., the First Proposal) and accepting one that they found be fair (i.e., the Second Proposal). There was no "duress." *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 569 (7th Cir. 1995) ("one cannot successfully claim duress as a defense to a contract when he had an alternative to signing the agreement"); *Reid v. IBM Corp.*,

---

[8] It was Mango Labs and Mr. Durairaj that duped Mango Markets users into releasing Mango Labs and Mr. Durairaj from liability, in order to obtain reimbursements from the Mango DAO treasury that they had already been guaranteed. (*See* ECF No. 9-3). As can be seen in the most recent proposal posted to the Mango DAO, Mango Labs and Mr. Durairaj are only interested in protecting themselves from liability. (Ex. 5).

7

No. 95 CIV. 1755 (MBM), 1997 WL 357969, at *7 (S.D.N.Y. June 26, 1997) (rejecting duress claim where "Plaintiff could have rejected the Release and pursued his legal remedies.").

In addition, duress merely renders a voidable (not void). *See E.E.O.C. v. Am. Exp. Pub. Corp.*, 681 F.Supp. 216, 219 (S.D.N.Y. 1988) ("Contracts induced by duress are voidable, not void; acceptance of benefits under the agreement constitutes ratification."). As this Court previously held, Counterclaim-Defendants "acceptance and decision to retain (to this day) the $67 million that [Mr. Eisenberg] paid out in consideration for the signing of the contract likely" ratified the contract. (Ex. 9 at 17:12-24); *see E.E.O.C.*, 681 F.Supp. at 219 ("Contracts induced by duress are voidable, not void; acceptance of benefits under the agreement constitutes ratification.").

### 2. *Counterclaim-Defendants Breached the Agreement*

There can also be no dispute that the Counterclaim-Defendants breached every aspect of the Settlement Agreement. As recited above, Counterclaim-Defendants: (1) filed a civil action against Mr. Eisenberg; (2) obtained an *Ex Parte* TRO freezing Mr. Eisenberg's funds (which was terminated by the court when the true facts were disclosed); and (3) have failed to repay all of the bad debt in the Mango Markets protocol.

Notably, during the preliminary injunction proceeding, the Court called out the Counterclaim-Defendants for wanting to have their cake and eat it too, *i.e.*, retain the funds transferred to them by Mr. Eisenberg and renege on their obligations under the Settlement Agreement. (Ex. 12 at 10:13-20 ("THE COURT: So how can the money be kept? Address the tender point. From my perspective it looks like you are in a heads-I-win-tails-I-lose-type argument. You want to keep the money or the people who assigned you the claims want to keep the money but they also want to pursue the claim having released their claims. I mean, under your view of this release what did the defendant get for the money that he returned…?"). Counterclaim-Defendants had no response. (*Id.* at 10:21-15:8 (the Court noting that Counterclaim-Defendants'

8

argument "sounds pretty weak to me" and that, following Counterclaim-Defendants' logic, it would be impossible to settle any claim).

\*       \*       \*

In view of the foregoing, Mr. Eisenberg is likely to succeed on his breach of contract claim. Similarly, Mr. Eisenberg has a meritorious claim for fraudulent inducement. Counterclaim-Defendants never had any intention of following through with the terms of the Settlement Agreement. As they later admitted, they simply viewed the agreement with Mr. Eisenberg as an interim mechanism to lull Mr. Eisenberg into returning $67 million to Counterclaim-Defendants, while pursuing the remainder through civil and criminal proceedings. (ECF No. 33, Hr'g Tr. at 4:21-5:2 ("[H]ow you can maintain a claim in the absence of a tender back to [Mr. Eisenberg] the consideration that the [he] paid in exchange for the release?")).

### B.    Mr. Eisenberg Will Be Irreparably Harmed Absent an Injunction

Absent an injunction the assets in the Mango Treasury will be disbursed, the Mango DAO will be dissolved, and recovery on Mr. Eisenberg's claims will be impossible. As explained above, the Mango DAO is an unincorporated entity—its token holders are generally anonymous and can be anywhere in the world. Counterclaim-Defendants cannot seriously dispute that irreparable harm is guaranteed absent an injunction. *See Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (irreparable harm is likely "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.").

A claimant can suffer irreparable harm when the court is unable to grant an effective monetary remedy after a full trial because such damages would be difficult to recover. *See, e.g., Dama S.p.A v. John Does 1-35*, 113 F. Supp. 3d 686 (S.D.N.Y. 2015) (granting preliminary injunction and ordering financial service providers not to transfer or dispose of assets); *Roswell*

9

*Cap. Partners LLC v. Alternative Const. Techs.*, No. 08 Civ. 10647(DLC), 2009 WL 222348, at *18 (S.D.N.Y. Jan. 30, 2009) (granting preliminary injunction to protect against dissipation of contested assets).

Here, the Court does not have to guess whether Counterclaim-Defendants plan to transfer the assets that could be subject to an award because Counterclaim-Defendants have outright stated as much. Counterclaim-Defendants have announced their intent to disburse the funds in the Mango Treasury, have consolidated the assets for distribution, have approved the plan to distribute the assets, and have announced the date/time that the distribution will take place. (Ex. 5). Thereafter, Counterclaim-Defendants plan to complete the winddown of Mango Markets and dissolve the Mango DAO in its entirety. (*Id.*) Unless the Counterclaim-Defendants are enjoined, any judgment Mr. Eisenberg may (and likely will) obtain would be worthless. Thus, Mr. Eisenberg would suffer irreparable harm in the absence of an injunction including a freeze of assets in the Mango Treasury and the continued dissolution of the Mango DAO.

### C. The Threatened Harm to Mr. Eisenberg Outweighs Any Injury to the Counterclaim-Defendants From an Injunction

The potential harm to Mr. Eisenberg, should the disbursement of the assets in the Mango Treasury proceed, greatly outweighs any potential injury to the Counterclaim-Defendants from an injunction—let alone an initial 14 day restraining order. *See Res. Grp. Int'l Ltd. v. Chishti*, No. 25-CV-1021 (JSR), 2025 WL 3034226, at *2 (S.D.N.Y. Oct. 30, 2025) ("The balance of potential harm to Respondent and Ms. Pobereskin is outweighed by the potential harm to Petitioner, as Respondent, in conjunction with Ms. Pobereskin, would likely dissipate the funds in the Bank of America Account, potentially rendering the money permanently unrecoverable.").

Besides the $67 million that Counterclaim-Defendants fraudulently induced Mr. Eisenberg to transfer to the Mango DAO, Mr. Eisenberg has incurred millions in damages as a direct result

of the Counterclaim-Defendants' actions, including having to defend against claims for which they granted an express release. Should the disbursement and dissolution proceed, and the remaining assets be liquidated, Mr. Eisenberg faces the prospect of being unable to collect any potential monetary judgment against the Counterclaim-Defendants. In contrast, the Counterclaim-Defendants will suffer relatively little harm if the dissolution is enjoined. The assets include primarily USDC (*see* Ex. 11), a highly regulated stablecoin pegged to the United States dollar on a 1:1 basis (i.e., one USDC is intended to always be worth one U.S. dollar).

### D. An Injunction Would Not Be Adverse to the Public Interest

Finally, there is no conceivable way in which an injunction preventing the immediate distribution of the assets in the Mango Treasury would harm the public interest. On the contrary, as a first step toward holding the Counterclaim-Defendants accountable for their actions, the issuance of an injunction preventing the liquidation of the assets would serve the public's considerable interest in the fair administration of justice. *Dykeman v. Ochoa*, No. 08-CV-122-B, 2008 WL 11411452, at *2 (D. Wyo. July 15, 2008) (in breach of contract matter, finding that "the public interest is served by assuring that the Plaintiffs recover the losses ultimately proven").

Further, the public interest is served by a TRO and asset freeze by protecting assets to allow Mr. Eisenberg the best chance to recover any losses determined by the Court. *See, e.g., Lazor v. Univ. of Conn.,* 560 F. Supp. 3d 674, 685 (D. Conn. 2021) (deterrence of future violations served the public interest and supported the grant of a preliminary injunction); *Sec. & Exch. Comm'n v. End of Rainbow Partners, LLC*, No. 17-CV-02670-MSK, 2017 WL 5404199, at *2 (D. Colo. Nov. 14, 2017) (asset freeze could advance the public interest by increasing the likelihood that ill-gotten funds are secured to satisfy a potential judgment).

In addition, Mr. Eisenberg wants to ensure that all Mango Markets users—who are not necessarily members of the Mango DAO—were in fact made whole pursuant to the Settlement

11

Agreement. (*See supra* §II.B).

## V. THE COURT SHOULD PRESERVE THE STATUS QUO

Mr. Eisenberg's request to preserve the status quo for a short period of time is reasonable and warranted. As explained above, the Mango Markets platform and the Mango Treasury have been largely ***dormant since late 2022.*** The founders of Mango Markets have been fighting amongst themselves for much of that time. Maintaining the status quo until the Court can hold a hearing is justified under these circumstances. *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) ("The purpose of a temporary restraining order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction.") (quotation omitted); *Empire Trust, LLC v. Cellura*, No. 24-CV-859, 2024 WL 1216729, at *2 (S.D.N.Y. Mar. 21, 2024) ("The purpose of a preliminary injunction is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo by preventing during the pendency of the suit the occurrence of that irreparable sort of harm which the movant fears will occur.") (citation and quotation marks omitted).

## VI. A BOND SHOULD NOT BE REQUIRED

The Second Circuit has held that district courts have "wide discretion to set the amount of a bond, and even to dispense with the bond requirement," such as "where there has been no proof of likelihood of harm." *Dr.'s Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997). In particular, Rule 65 permits this Court to issue a temporary restraining order without bond to preserve the status quo until further order of the Court. Here, Mr. Eisenberg is aware of no harm to Counterclaim-Defendants in maintaining the status quo—that has existed for the past three years—for a short period of time until a hearing can be held.

## VII. CONCLUSION

For the above reasons, the temporary restraining order should be granted and the Court should set a hearing on Mr. Eisenberg's motion for a preliminary injunction.

Dated: January 27, 2026

Respectfully submitted,

TARTER KRINSKY & DROGIN LLP

By: _s/ Mark Berkowitz_
Mark Berkowitz
1350 Broadway
New York, NY  10018
Tel.:     (212) 216-8000,
Fax:     (212) 216-8001
E-mail:  mberkowitz@tarterkrinsky.com

*Attorneys for Defendant and Counterclaim-Plaintiff Avraham Eisenberg*