

Michael Burshteyn
Tel 415.655.1300
Michael.Burshteyn@gtlaw.com

January 27, 2026

**VIA ECF**

The Honorable Lewis J. Liman
United States District Court 500 Pearl Street
Southern District of New York Courtroom 15C
500 Pearl Street, Room 1620 Matthew Fishman, Courtroom Deputy
New York, NY 10007

      Re:    *Mango Labs, LLC v. Eisenberg*, No. 23-cv-00665

Dear Judge Liman:

On behalf of Plaintiff Mango Labs, LLC and Counter-Defendant Dafydd Durairaj, we respectfully submit this letter to apprise your Honor of our clients' position with respect to the pending motion for a Temporary Restraining Order and Preliminary Injunction in advance of this afternoon's hearing.

Mango Labs and Mr. Durairaj intend to oppose the TRO. Mr. Eisenberg cannot meet the high standard for affirmative injunctive relief. *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) ("Because mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'") (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)).

    **I.**    **Mr. Eisenberg's Delay and Procedural Gamesmanship Negates Irreparable Harm**

Mr. Eisenberg's delay has created artificial urgency that does not support his request for extraordinary affirmative injunctive relief. Mr. Eisenberg chose not to bring this action in this Court and instead filed the same case against Mr. Durairaj and Mango Labs (as well as Mango DAO) in Wyoming on January 12, 2026. *See Eisenberg v. Mango Labs, LLC, et. al*, No. 26-cv-11-SWS (D. Wyo). Mr. Eisenberg then waited eight days to file his TRO in Wyoming on January 20, 2026. Mr. Eisenberg did not serve the TRO on Mango Labs, Mr. Durairaj, or the Mango DAO. Mr. Durairaj and Mango Labs were not aware of the TRO until four days later, this past Saturday, January 24.

Despite this, Mr. Eisenberg represented to the Court in Wyoming that Mr. Durairaj and Mango Labs took no position on the TRO. *Id.*, ECF No. 14. This was not an accurate representation. Mr. Durairaj and Mango Labs alerted the Court to this inaccurate representation and their intent to oppose the TRO yesterday morning. *Id.*, ECF No. 17. The Court held a hearing of approximately

**Greenberg Traurig, P.A. | Attorneys at Law**
101 Second Street  |  Suite 2200  | San Francisco, CA 94105  |  T +1 415.655.1300

www.gtlaw.com

Hon. Lewis J. Liman
January 27, 2026
Page 2

one hour, heard argument, and then dismissed the case without granting any of the requested relief. *Id.*, ECF No. 23.

Mr. Eisenberg could have filed his TRO here in this Court over a month ago. The Settlement Agreement in the Puerto Rico actions announcing the dissolution occurred December 18, 2025. Even after he filed his Complaint on January 12, 2026, he waited weeks more to seek emergency relief in Wyoming.

**Other irreparable harm considerations merit denying Mr. Eisenberg's request for relief as well.** First, this case is about money. It is a classic situation where the Mango DAO has a treasury of fungible currencies that will be claimed by MNGO token holders. This is not a situation of conversion like the prior TRO that Mango Labs sought. *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010) ("We have long held that an injury compensable by money damages is insufficient to establish irreparable harm.").

Second, the Mango DAO has been using the funds at issue in its Treasury for years, and Mr. Eisenberg is only now concerned. Since this case was stayed on April 12, 2023 (*see* ECF Nos. 53, 54), Mango DAO has funded operations and has also done liquidations associated with buybacks in excess of millions of dollars. Mr. Eisenberg should have filed his emergency relief request then, given that those outlays would have triggered the same concerns he is articulating now.

Apart from these irreparable harm issues, there are also unresolved jurisdictional and venue issues in this case. Mr. Eisenberg himself has challenged venue in the Southern District of New York in his criminal trial. That issue is now on appeal with the Second Circuit. In Mr. Eisenberg's pleading filed today, he takes contradictory stances on venue and jurisdiction issues. Further, Mr. Eisenberg names the Mango DAO in this matter, even though earlier this week he voluntarily dismissed the Mango DAO from the case based on the Court in Wyoming's Order to Show Cause requiring Mr. Eisenberg to submit the residence of DAO members to determine the issue of diversity jurisdiction. All these open questions vitiate against extraordinary affirmative injunctive relief.

## II.    Mr. Eisenberg's Will Not Succeed on the Merits of His Claims

Mr. Eisenberg faces a high bar to support emergency affirmative injunctive relief that requires he show he is likely to succeed on the merits of his claims. The Court would need to make a finding at this preliminary stage, short of an evidentiary hearing, discovery, and development of a variety of complex legal and factual issues that involve half a dozen related federal cases in the Southern District of New York, District of Puerto Rico, and the Second Circuit. Today, he cannot clear this bar.

**Duress.** The question of duress is not resolvable in Mr. Eisenberg's favor at this stage. Mr. Eisenberg attacked Mango Markets, manipulated the market, and misappropriated approximately $114,000,000 in cryptocurrency from it. He then fled the country. When members of the Mango DAO communicated with the attacker, they did not know that it was Mr. Eisenberg or someone

Hon. Lewis J. Liman
January 27, 2026
Page 3

else. They had no economic leverage of any sort. All they knew was that the funds had been lost and there was someone who might return them. This is not an arms length negotiation akin to any case that Mr. Eisenberg can point to. It is not the same as someone who is arrested for alleged criminal theft and then, over time, negotiates a settlement of his civil claims. Mr. Eisenberg was on the run. The nature of blockchains and cryptocurrencies is such that Mr. Eisenberg could have easily absconded with the funds, transferred them between wallets and platforms, and made them unreachable. This is the norm in the cryptocurrency industry.

The determination of whether there was duress will require a complex inquiry into the hour-by-hour events in the aftermath of Mr. Eisenberg's attack as well as nuanced application of the law surrounding duress. *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011) ("The doctrine of economic duress is grounded in the principle that courts 'will not enforce an agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to do an unlawful injury.'") (quoting *VKK Corp. v. NFL,* 244 F.3d 114, 122 (2d Cir.2001)); *First Nat. Bank of Cincinnati v. Pepper*, 454 F.2d 626, 632 (2d Cir. 1972) ("'where one party has control or possession of the goods of another and refuses to surrender such goods to the owner thereof except upon the latter's compliance with an unlawful demand, a contract made by the owner to emancipate his property is considered as one made under duress and thus avoidable.'") (quoting *Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 249 F.Supp. 526, 529 (S.D.N.Y. 1966), *affd*., 372 F.2d 753 (2d Cir. 1967)).

**Wrong parties.** Further, the contract Mr. Eisenberg seeks to enforce is **not** with the claimants who assigned their claims to Mango Labs. Those claimants are depositors who used Mango Markets. There was no agreement that those Mango Markets depositors would be bound by any decisions or contracts entered into by the Mango DAO. Mr. Eisenberg has no basis to argue that those whose money he misappropriated cannot assign their claims to Mango Labs for Mango Labs to pursue recovery. He has no contract with the underlying victims. This is a critical distinction that Mr. Eisenberg has repeatedly glossed over.

**Unenforceable terms.** There are issues with the terms Mr. Eisenberg seeks to enforce as well. One term he claims Mango DAO breached is cooperation with law enforcement. It is not enforceable to have a contract where the parties agree not to be witnesses in a federal criminal investigation and trial. *See In re Cromer*, 153 B.R. 391, 397 (Bankr. E.D.N.Y. 1993) ("any agreement to do or commit an illegal act is illegal and Courts will not hesitate to deem it such").

**Mango Labs' Complaint Does Not Breach Anything.** With respect to the provision in the purported agreement about freezing Mr. Eisenberg's assets, this was not about a request to a Court. As Mr. Eisenberg well knows, in the crypto industry there are mechanisms to freeze tokens that some Decentralized Finance platforms have available to them. Mango DAO did not in fact freeze Mr. Eisenberg's tokens. In response to Mango Labs, LLC's case, Mr. Eisenberg can attempt to dismiss it based on the agreement, but he should not be permitted to achieve an extraordinary affirmative TRO based on Mango Labs seeking this Court's determination on a declaratory judgment action whether the contract is enforceable.

Hon. Lewis J. Liman
January 27, 2026
Page 4

**Mr. Eisenberg's Fraud Claims Fail on a TRO Posture as Well.** Mr. Eisenberg's fraud claims fail for a multitude of reasons. They do not comply with Rule 9(b) and provide the who, what, when, where of the statements he supposedly relied on. It is not credible that Mr. Eisenberg would have relied on any of the supposed settlement language to return the funds. More plausible is that Mr. Eisenberg returned a large portion of the funds he misappropriated in order to attempt to make it seem like the remainder he kept was a reward or bounty for him. Mr. Eisenberg likely thought that if he returned a large sum, the depositors could be made whole and then would not pursue him. He may have thought that law enforcement would not pursue him either.

### III. Mr. Eisenberg's Characterizations of the Preliminary Injunction Hearing on Mango Labs' Injunction Request are Inapposite

The Court's prior observations in denying Mango Labs, LLC's preliminary injunction request do not support Mr. Eisenberg's TRO request now. The Court's prior ruling reviewed the factors holistically and considered the issue of irreparable harm and reasonable success on the merits. It did not find that Mr. Eisenberg met a TRO standard, but only that Mango Labs did not meet a preliminary injunction standard. Now Mr. Eisenberg attempts to read into that transcript a summary judgment order against Mango Labs and Mr. Durairaj. That is not what happened. It is well-established that preliminary injunction proceedings do not have preclusive effect. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). This is because preliminary injunction proceedings serve a limited purpose to "merely preserve the relative positions of the parties until a trial on the merits can be held." *Id.* Therefore, "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Id.*

### IV. The Balance of Equities and Public Interest Favor Denying the TRO

Mr. Eisenberg destroyed Mango DAO and Mango Markets with his attack. It has never recovered. Even so, he retains approximately $47,000,000 of the funds he misappropriated through his market manipulation attack. Now Mr. Eisenberg, years later, is attempting to interfere with Mango DAO's dissolution so that the MNGO Token Holders can move on.

Following Eisenberg's attack, Mango DAO did the right thing. It used its own funds out of its Treasury to make the depositors who lost all their money to Mr.Eisenberg's attack whole. It is not equitable to now permit Mr. Eisenberg to conduct yet another attack on the Mango DAO by stopping those MNGO Token Holders from dissolving the Mango DAO.

The crypto markets of late have been volatile and there are significant risks that the Treasury now, with tens of millions in value, will be the target of further attacks. The majority of engineers who previously maintained the software involved with Mango DAO have quit following the destruction caused by Mr. Eisenberg. It is a honeypot of money that will attract those like Mr. Eisenberg, particularly in the current circumstances. Dissolution is the safest way to ensure that the funds are not lost.

Hon. Lewis J. Liman
January 27, 2026
Page 5

It is not in the public interest to enable those who manipulate markets and misappropriate funds to then, under duress, return some of the funds and attempt to extinguish all claims against them for the remainder, and then use that to achieve mandatory affirmative injunctive relief.  This would wreak havoc on the crypto industry if it is permitted and prompt additional attacks like Mr. Eisenberg's.

\*\*\*

Mango Labs and Mr. Durairaj respectfully request that this Court deny Mr. Eisenberg's extraordinary relief request and permit full briefing on the issues to the extent that a preliminary injunction consideration is still an open question.

                                                Respectfully,

                                                Michael Burshteyn

                                                Greenberg Traurig, LLP

                                                Rafael Yakobi

                                                The Crypto Lawyers, PLLC

cc: Counsel via CM/ECF